[No. 35692-5-I.   Division One.   May 28, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN LAMONT SMITH, *Appellant*.

*Richard R. Tassano* of *Washington Appellate Project,* for appellant.

156

*Norm Maleng, Prosecuting Attorney*, and *Ann M. Foerschler, Deputy*, for respondent.

AGID, J. — Kevin Lamont Smith appeals his 100 year sentence for attempted first degree murder and first degree robbery, rape and kidnapping. He argues that the trial court erred when it imposed an exceptional sentence upward which is clearly excessive and based on factors that do not justify an exceptional sentence. Smith also argues that the court erred in failing to specify the length of the sentence imposed for each offense and failing to timely enter written findings of fact and conclusions of law. We hold that the record supports the grounds for and length of the sentence and that Smith was not prejudiced by the late entry of findings and conclusions. Although we agree with Smith that the trial court should identify the sentence it is imposing for each crime, the failure to do so here was harmless. Accordingly, we affirm.

## FACTS

Shortly after 11:30 p.m. on May 7, 1994, 26–year–old C.F. was attacked by Kevin L. Smith and Remus G. Jordan on the street outside her residence on Capital Hill in Seattle. Smith and Jordan, who were looking for cars to prowl, saw C.F. park her car and decided to "jack her." They ran up and grabbed her, held a nail file to her throat, and forced her into the back seat of her car. Smith drove the car to a secluded area where he got into the back seat with C.F. and forced her to disrobe. Smith forced her to perform fellatio while Jordan looked through C.F.'s purse and bags for money. Smith then drove to a gas station where Jordan bought cigarettes using the money he had

found. Smith later told police it was at this point that he decided to kill C.F. so she could not identify them later. Smith then drove south to a store where Jordan bought beer with the remainder of C.F.'s money. Throughout the abduction, C.F. pleaded for her life but was told to shut up and threatened her with death if she did not.

Smith then drove to Kentridge High School where he asked Jordan to give him the screwdriver he had with him. Smith took the screwdriver, ordered C.F. out of the car, took her behind the building, and stabbed her nearly 30 times. There were 7 wounds in her buttock, 6 in her hip, 8 on her hands, 2 on her feet, 1 each in her side, chest, and neck, and 2 wounds in her head. One of the stab wounds to her head penetrated her skull and brain up to the handle of the screwdriver. When Smith returned to the car, he told Jordan he had "killed the bitch" so that she could not identify them and asked for a towel to wipe off his hands. Smith later cleaned the car to remove all evidence and left items belonging to C.F. which were in the car at his mother's home.

C.F. was found by a passerby on May 8, 1994, at approximately 5:30 a.m., unconscious and in critical condition. She suffered permanent brain damage, leaving her paralyzed on the right side of her body and impairing her cognitive and communicative skills to the extent that her physicians doubt she will ever again be able to live independently. C.F.'s difficulty in communicating also exacerbates the psychological and emotional trauma she continues to endure. C.F. is able to recall the entire assault up to point at which she lost consciousness, including trying to get up from the sidewalk where she was found after she was stabbed in the head but finding that her body was unable to respond.

Smith was arrested on May 16, 1994, and charged by amended information with attempted first degree murder and first degree kidnapping, robbery, and rape. He pleaded guilty to these charges on September 8, 1994, and a sentencing hearing was held on November 18, 1994. At

the sentencing hearing, C.F.'s family and friends addressed the court, describing the impact of the crimes on C.F. and her family. The court also viewed a videotape prepared for the hearing in which the victim's mother and various caregivers addressed the court and a doctor described the injuries to C.F.'s brain.[1] C.F. also addressed the court on the tape using drawings and pantomime to describe the terror she had experienced and the fear she continued to feel. The trial court listened to the oral remarks of the various individuals who appeared at the hearing, including Smith's allocution, and reviewed the certification of probable cause. The court then found that there were substantial and compelling reasons to impose an exceptional sentence upward and sentenced Smith to 100 years in prison. This appeal followed.

## DISCUSSION
### Specific Sentence Imposed for Each Count

Smith first contends that the trial court abused its discretion by failing to specify the length of the sentence imposed for each current offense. Smith argues that it is impossible to determine from the record how the trial court arrived at the 100 year figure. We disagree.

First, the judgment and sentence lists 100 years as the "total confinement for all counts 1–4." Although it is true that this statement does not explain how the trial court arrived at the 100 year figure, it is not ambiguous in terms of stating the trial court's intention to impose a total sentence of 100 years for all four counts. Second, the written findings and conclusions consistently refer to: "*A sentence of one hundred years under this cause number*". (Italics ours.) Because all four counts were charged under the same cause number, the only possible interpretation is that the 100 year sentence was imposed for all four counts together.

---

[1] Although the videotape was not included in the record on appeal, there are references to the tape and its content in the record.

■ Although neither the judgment and sentence nor the written findings and conclusions explain the basis on which the court arrived at the 100 year figure, the report of proceedings and the scoring sheet to which the court refers in its oral ruling make clear the basis for the court's decision. *See In re LaBelle*, 107 Wn.2d 196, 219, 728 P.2d 138 (1986) (an appellate court may look to the oral decision of the trial court to clarify the basis of a written ruling). The scoring sheet anticipates that any sentence for counts 2 (kidnapping) and 3 (robbery) run concurrently with that for count 1 (attempted first degree murder), and that the sentence for count 4 (rape) run consecutively to the sentences for counts 1, 2, and 3. The standard range for count 1 is calculated as 195.75–260.25 months; the standard range for count 3 is calculated as 65–78 months; and the standard range for count 4 is calculated as 102–126 months. At the sentencing hearing, the State explained that the parties had stipulated that the crime of first degree kidnapping was encompassed within the scope of the other crimes of which Smith was convicted and therefore did not have a standard range and did not contribute to the offender score.[2]

The trial court's written findings and conclusions, which include a finding that "[a]n exceptional sentence of one hundred years is 3.1 times the high end of the standard ranges in this case," further support the conclusion that the basis on which the trial court arrived at the 100 year sentence is that described on the scoring form: 3.1 times the high end of the standard ranges as set forth on that form is 1,197.33 months, just under the 1,200 months actu-

---

[2]Smith's written plea form concurs in the calculation of the standard ranges on the scoring form attached to the plea and states, "I am pleading guilty to take advantage of the agreed offender scoring." In addition, in response to a question by the trial court about whether there was any dispute over the calculation of the standard ranges of the crimes for which Smith was convicted, defense counsel stated:

No. [The deputy prosecutor] and I went through the scoring very carefully. We believe the scoring for the counts is accurate, that the concurrent sentences are appropriate, that the consecutive charges are appropriate, and I don't have any problem with anything that the State's come up with in that regard.

ally imposed. This finding is consistent with the trial court's comment during its oral ruling that the exceptional sentence of 100 years sought by the State, which it then went on to impose, is 3.1 times the high end of standard ranges for the crimes of which Smith was convicted.

■ Although we reject Smith's contention that it is impossible to tell from the record how the trial court arrived at the 100 year figure,[3] we agree that the trial court should have specified what sentence it was imposing for each count. In most cases, it is virtually impossible to review on appeal issues of excessive length and the validity of aggravating factors if the sentence imposed for each count and the specific aggravating factors that apply to each are not articulated and set out in the judgment and sentence and the findings and conclusions. Here, we are able to affirm even without such a breakdown only because, as discussed below, we are able to uphold all the aggravating factors and would uphold the length of the sentence even if those factors applied only to the attempted first degree murder count. Were that not the case, we would have no option but to remand to the trial court to segregate the punishment imposed for each count and to specify the particular factors relied on for each.

### Reasons for Exceptional Sentence

■ Under the Sentencing Reform Act of 1981, a trial

---

[3]We also reject the State's contention that the record reflects that the trial court intended to impose four concurrent terms of 100 years each. The State relies on the court's one word affirmative response "yes" in the course of the colloquy between the court and counsel following imposition of the sentence. This does not support the State's argument. Rather, it simply indicates the court's agreement with defense counsel's statement that it would be best for purposes of the record if the court indicated the specific sentence imposed for each count. Instead, the court expressed a concern during that colloquy about whether the judgment and sentence properly reflected the statutory requirements for *"the consecutive* sentences." This alone *indicates that the court did not intend to* impose four concurrent terms of 100 years each. The State's contention that the minute entry for the sentencing hearing reflects that four concurrent 100 year sentences were imposed is similarly without merit. On the minute entry, the appropriate blank has simply been filled in with the notation "100 years on counts I, II, III + IV." The notation is at best ambiguous and, in any event, it was neither prepared nor signed by the sentencing judge.

court must impose a sentence within the standard range unless it finds substantial and compelling reasons to justify a departure. RCW 9.94A.120(2); *State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991). RCW 9.94A.210(4), which governs appellate review of an exceptional sentence, provides:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

Because the question whether a trial court's reasons for imposing an exceptional sentence are supported by the record is a factual determination, we will uphold those reasons so long as they are not clearly erroneous. *State v. Nordby*, 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986). Thus, we will reverse a trial court's finding as to the presence of an aggravating factor only if no substantial evidence supports its conclusion. *State v. Scott*, 72 Wn. App. 207, 213, 866 P.2d 1258 (1993) (citing *Grewe*, 117 Wn.2d at 218), *aff'd*, 126 Wn.2d 388, 894 P.2d 1308 (1995). On the other hand, we independently determine whether the trial court's reasons justify the imposition of a sentence outside the presumptive range as a matter of law. *Nordby*, 106 Wn.2d at 518. The reasons must be " 'substantial and compelling' " and must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense. *Nordby*, 106 Wn.2d at 518 (quoting RCW 9.94A.120(2)). We may uphold an exceptional sentence if we find any of the sentencing court's reasons for imposing the sentence valid. *State v. Gaines*, 122 Wn.2d 502, 512, 859 P.2d 36 (1993). Even if we decide that any of the reasons are invalid, remand is necessary only if it is not clear whether the sentencing court would have imposed the same sentence based on the valid factors alone. *Gaines*, 122 Wn.2d at 512.

## 1. Deliberate Cruelty

Smith first contends that the trial court's finding of deliberate cruelty is not supported by the record and does not justify imposition of an exceptional sentence under the facts of this case. Deliberate cruelty is gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself. *Scott*, 72 Wn. App. at 214. The trial court's finding of deliberate cruelty in this case was predicated on numerous facts. C.F. was subjected to nearly two hours of pure terror during which she was repeatedly stabbed and threatened with death. Her attackers also subjected her to excessive degradation in the course of the rape, including being forced to disrobe and to perform oral sex. The manner in which the crimes were committed was far more egregious than that normally associated with a rape, kidnap, or robbery, based both on the instrument used to stab the victim and the manner in which the victim was stabbed, including burying the screwdriver in her head up to the handle. The court also found that Smith abandoned the victim to die a slow and painful death without making any effort to aid her or summon help and that he engaged in conduct to hide evidence of his crimes. Finally, the court relied on evidence that the victim's life has been irreparably altered because she is now paralyzed on the right side of her body, has suffered permanent brain damage that has impaired her cognitive and communicative abilities to the point that she is likely never to be able to live independently, and that she endured and will continue to endure severe emotional and psychological trauma as a result of Smith's acts.

Notwithstanding Smith's challenges to the trial court's finding of deliberate cruelty on appeal, defense counsel conceded below:

> [A]fter review of the case law, I agree with [the deputy prosecutor] that the aggravating circumstance of deliberate cruelty has been proven and would be an appropriate factor for the Court to consider in this case. That factor would justify

the imposition of an exceptional sentence above the standard range. However, the other factors listed by the State would not.

A little later, while urging the court to impose an exceptional sentence upward of shorter duration, defense counsel again conceded Smith's "deliberate cruelty" and acknowledged both the severity of C.F.'s injuries and the fact that she "will never be free of her injury." This alone is sufficient to preclude Smith's challenge to the trial court's reliance on this factor on appeal. *See State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990) (a party is precluded from setting up an error at trial and then complaining of it on appeal). Even if defense counsel had not made this concession, however, Smith could not prevail.

Smith challenges only one of the factors relied on by the trial court for its finding of deliberate cruelty on the basis that it is not supported by the record. He argues that there is no evidence in the record that Smith intended to leave the victim to die a slow and painful death because Smith thought she was dead when he left the scene. The court found, however, not that Smith *intended* to leave the victim to die a slow and painful death, but that he *in fact left* the victim to die a slow and painful death without making any attempt to seek aid for her. The finding the trial court actually made is clearly supported by the record. Even if it were not, however, the remaining factors alone, which Smith does not argue lack support in the record, are sufficient to justify the court's reliance on deliberate cruelty to impose an exceptional sentence. *See State v. Alexander*, 125 Wn.2d 717, 723, 888 P.2d 1169 (1995) (an unchallenged factual finding in connection with sentencing is treated as a verity on appeal).

As noted above, deliberate cruelty is gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself and has not been considered in computing the presumptive range for the offense. *Scott*, 72 Wn. App. at 214. Smith was convicted of

attempted first degree murder and first degree rape, kidnapping and robbery. All of these crimes except rape can be committed without actually causing the victim any physical injury whatsoever, and even first degree rape does not necessarily contemplate physical injury comparable to that here. Inflicting nearly 30 stab wounds with a blunt instrument, two of those to the head, one of which penetrated the victim's brain, is clearly not a factor taken into account in computing the presumptive range for any of these crimes. *See State v. Ritchie*, 126 Wn.2d 388, 401, 894 P.2d 1308 (1995) (a court may consider that the nature and extent of the injuries is far more severe than in the "usual case"); *State v. Buckner*, 74 Wn. App. 889, 896–97, 876 P.2d 910 (1994) ("brutal tortuous violence where a victim is stabbed repeatedly and left to die leisurely" is deliberate cruelty not usually associated even with the crime of murder) (citing *State v. Crane*, 116 Wn.2d 315, 334, 804 P.2d 10, *cert. denied*, 501 U.S. 1237 (1991)), *rev'd on other grounds*, 125 Wn.2d 915, 890 P.2d 460 (1995). Even if Smith were not precluded from challenging on appeal the court's reliance on deliberate cruelty as a reason to impose an exceptional sentence upward, there would be no basis for concluding that the trial court's reliance on deliberate cruelty as a reason to impose an exceptional sentence was invalid in the context of this case.

### 2. Multiple Incidents of Trauma

Smith next argues that the trial court's finding of multiple incidents of trauma is subsumed in deliberate cruelty. Therefore, he contends, the court may not use these multiple incidents of trauma as an independent ground to impose an exceptional sentence. But the trial court's oral ruling suggests that it distinguished between the number of times C.F. was stabbed and the manner in which the stabbings occurred, including both the nature of the instrument used and the fact that one of the blows penetrated her skull and brain, as separate factors supporting the imposition of an exceptional sentence. The

Supreme Court has held that the same acts of a defendant in inflicting multiple injuries in the course of attempting first degree murder can support findings of both deliberate cruelty and multiple incidents justifying the imposition of an exceptional sentence upward. *State v. Dunaway*, 109 Wn.2d 207, 219, 743 P.2d 1237, *supplemented in* 749 P.2d 160 (1987). The trial court's reliance on the multiple stab wounds as a basis for both its findings of deliberate cruelty and multiple incidents of trauma was therefore not error, particularly in light of its assertion that it would have imposed the same sentence based on any single reason alone.

3. Efforts to Conceal the Crime

■■ Smith next argues that the trial court erred in relying on Smith's efforts to conceal his crimes as an aggravating factor in connection with his conviction for attempted first degree murder. He relies on the difference between RCW 10.95.020(9), which lists efforts to conceal a crime as an aggravating factor for aggravated first degree murder, and RCW 9.94A.390(2), which does not list it as grounds for an exceptional sentence. As Smith himself acknowledges, however, the list of factors in RCW 9.94A.390 is not exhaustive but only illustrative. *See State v. Bartlett*, 128 Wn.2d 323, 330, 907 P.2d 1196 (1995); *Nordby*, 106 Wn.2d at 516. Especially under the facts of this case, where Smith's crime could have constituted aggravated first degree murder had the victim not somehow survived despite the grievous injuries inflicted on her, the trial court's reliance on Smith's efforts to conceal the crime as a reason to impose an exceptional sentence upward was not an abuse of discretion.

4. Random Act of Violence

■ Smith also argues that the trial court erred in relying on its conclusion that the crimes against C.F. constituted a random act of violence as a reason for imposing an exceptional sentence. The trial court explained its reliance on this reason as follows:

The last criteri[on] is one of random violence. The Court finds that random violence is an aggravating circumstance to justify and warrant an exceptional sentence. The facts in this case clearly indicate to the Court the wanton acts of uncontrolled anger directed in a random and senseless manner. The acts of violence defy analysis or rationality. The type of offense tears at the fabric of our society's sense of security.

Smith takes the trial court's reference to "society" out of context to argue that this finding was not supported by the record because there is no evidence in the record of its actual effect on others or of specific community impact or fear. *See State v. Johnson*, 124 Wn.2d 57, 73–74, 873 P.2d 514 (1994). His argument misconstrues the focus of the court's remarks. The court's focus is not on the specific effect Smith's crimes had on other individuals but rather on the complete absence of any reason to inflict extreme and brutal violence far in excess of that necessary to accomplish any of the underlying crimes on a victim Smith simply happened upon. *See State v. Smith*, 58 Wn. App. 621, 626–27, 794 P.2d 541 (1990), *rev'd on other grounds*, 117 Wn.2d 701, 712, 818 P.2d 1088 (1991).

We agree that a random act of violence may, under certain circumstances, be a valid aggravating factor. The unpredictable and irrational choice of a victim in this case, combined with the wanton, senseless nature of the violence inflicted on that victim, shocks the conscience and justifies reliance on the random nature of the act as a factor supporting an exceptional sentence here. Choosing to torture a complete stranger in the way and to the extent that the victim in this case was tortured is incomprehensible in a civilized society. Because it defies analysis and common understanding, such senseless, random violence reinforces the fears and sense of danger that undermine the public's sense of safety and confidence in law enforcement. Although random violence is not a factor that would apply in the ordinary case, the randomness combined with

the extreme nature of the violence inflicted in this case justifies the imposition of an exceptional sentence.

## Length of Exceptional Sentence

█ Smith also argues that the length of the sentence the trial court imposed was clearly excessive. The length of an exceptional sentence is reviewed only for abuse of the trial court's discretion. *Ritchie*, 126 Wn.2d at 392. If the reasons for the exceptional sentence are supported by the record and justify an exceptional sentence upward, a reviewing court must find that the sentence is one no reasonable person would have imposed, i.e., it is based on untenable grounds or imposed for untenable reasons. *Ritchie*, 126 Wn.2d at 392–93 (citing *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986)). Here, the trial court noted that the 100 year sentence is 3.1 times the top of the standard range for the crimes of which Smith was convicted. In light of the reasons given by the trial court for imposing an exceptional sentence upward and the egregious nature of the injuries inflicted in this case, a sentence of just over 3 times the top of the standard ranges for the crimes of which Smith was convicted is neither untenable nor clearly excessive.

## Belated Entry of Findings and Conclusions

█ RCW 9.94A.120(3) requires a trial court to enter written findings of fact and conclusions of law when it imposes a sentence outside the standard range. As Smith notes, the court's written findings and conclusions had not yet been filed at the time he filed his opening brief. They have since been filed. The question thus becomes whether there is any showing of prejudice or tailoring as a result of their late entry. *State v. Nelson*, 74 Wn. App. 380, 393, 874 P.2d 170, *review denied*, 125 Wn.2d 1002 (1994). Here, no reply brief has been filed and no claim of prejudice or tailoring has been made. A careful comparison of the written findings and conclusions with the court's oral ruling, moreover, demonstrates that the written findings track

almost verbatim the court's spoken words. As such, there is no basis for concluding that Smith was prejudiced by their late entry or that the written findings and conclusions were tailored in response to issues raised by Smith in his opening brief.

Affirmed.

KENNEDY, A.C.J., and ELLINGTON, J., concur.