165 P.3d 409 (2007)
STATE of Washington, Respondent,
v.
Bryce M. HALSEY, Appellant.
Nos. 22509-7-III, 22850-9-III.
Court of Appeals of Washington, Division 3.
August 23, 2007.
*411 Janet G. Gemberling, Gemberling & Dooris PS, Spokane, WA, for Appellant.
Benjamin Curler Nichols, Deputy Pros. Atty., Asotin County Prosecutors Office, Asotin, WA, for Respondent.
STEPHENS, J.
¶ 1 Bryce M. Halsey appeals his guilty plea and exceptional sentence for one count of first degree child rape. He contends the State breached the plea agreement. He also contends the court erred by imposing an exceptional sentence and by amending a restitution order. We affirm.

FACTS
¶ 2 On January 7, 2003, Deputy Sheriff Marlene Herrick was dispatched to the hospital to investigate a reported incident of sexual assault. When the deputy arrived, she spoke with Cassi Wilman. Ms. Wilman told the deputy that she went home during her lunch break from classes at Walla Walla Community College and heard screaming coming from a bedroom. She said she went to the bedroom, but the door was locked. Ms. Wilman forced her way into the bedroom and saw her three-year-old daughter, C.W., lying on the bed. C.W. was crying and screaming. Ms. Wilman said her boyfriend, Mr. Halsey, was squatting on the edge of the bed facing C.W. Ms. Wilman pushed Mr. Halsey away and noticed that his pants were unzipped. C.W. was bleeding from the vaginal area and her underpants were covered in blood. Deputy Herrick was advised by an emergency room doctor that C.W. had vaginal bleeding, tearing and bruising to the vaginal area.
¶ 3 Deputy Herrick then went to Ms. Wilman's home to arrest Mr. Halsey. After waiving his Miranda[1] rights, Mr. Halsey told the deputy that C.W. was playing with one of his wrenches when she fell on it. He told the deputy that he was only checking C.W.'s "private" for bruising. Clerk's Papers (CP) at 16.
*412 ¶ 4 The State charged Mr. Halsey with one count of first degree child rape. He pleaded guilty to the charge. At the plea hearing, the prosecutor informed the court that the State agreed to forego recommending an exceptional sentence in favor of a standard range sentence of 160 months followed by lifetime supervision. The court accepted Mr. Halsey's plea and ordered a full presentence investigation report to be conducted by the Department of Corrections. The court postponed sentencing until receipt of the report.
¶ 5 On August 22, the court held a sentencing hearing. Consistent with the plea agreement, the prosecutor stated that the State recommended 160 months incarceration followed by lifetime supervision. The prosecutor reserved the issue of restitution, observing that Mr. Halsey had agreed to pay any restitution to C.W. for costs associated with medical care or counseling incurred as a result of the incident.
¶ 6 The prosecutor informed the court that he had been provided with a letter from Ms. Wilman, and had provided a copy to defense counsel. Defense counsel said that he did not have any objection to the letter being submitted on behalf of the State. The court then read the letter into the record:
I am the victim's mother. In my point of view, I think that Bryce Halsey is sick in the head. I hate him with a passion and for what he did to my daughter was wrong, and I hope that he rots in jail for this. Because of [sic] I have to deal with this for the rest of my life and so do my two girls. I have to tell them that my youngest daughter's dad raped my oldest daughter. It is not right for me to have to face that in the future.
My youngest daughter will not be able to get to know her dad while she grows up. The only thing that she will know is what she  what he did to her sister.
That is all for now.
Thanks.
Sincerely, Cassi Wilman.
Report of Proceedings (RP) (Aug. 22, 2003) at 6. The court also considered the presentence investigation report, which recommended an exceptional sentence of life in prison with a review at 236 months. At the conclusion of the hearing, the court imposed an exceptional sentence of 720 months based on aggravating circumstances. The court found Mr. Halsey engaged in deliberate cruelty because C.W. was 3 years and 2 months old and Mr. Halsey was 23-½ years old. The court also found that due to C.W.'s age, she was extremely vulnerable and unable to resist and that Mr. Halsey violated his position of trust as C.W.'s daycare provider. The court reserved on the issue of restitution. In the judgment and sentence, the court ordered that a restitution amount was "TBD" (to be determined) and that a restitution hearing "shall be set by the prosecutor." CP at 67, 68.
¶ 7 On January 13, 2004, the parties entered an agreed order on restitution. The order required payment of $715.79 for C.W.'s medical expenses and reimbursement to the Crime Victim Compensation Fund. On February 5, the State filed a notice of hearing to amend the restitution order. Mr. Halsey objected, arguing that the court could not issue a new restitution order, because over 180 days had passed since sentencing.
¶ 8 At the hearing, the State argued that an amended restitution order was appropriate, because Mr. Halsey had agreed to pay restitution to include the cost of counseling for C.W. The State argued that at the time of the first restitution order, it did not have an amount for the cost of counseling. The court granted the State's motion to amend restitution and entered an order amending restitution to include $4,480.00 to cover counseling costs for C.W.
¶ 9 Mr. Halsey timely appealed both the judgment and sentence and the order amending restitution. These appeals are consolidated.

ANALYSIS
A. Breach of the plea agreement
¶ 10 Mr. Halsey contends the prosecutor breached the plea agreement. A plea agreement is a contract between the State and the defendant. State v. Sledge, 133 Wash.2d 828, 838, 947 P.2d 1199 (1997). By entering into a plea bargain, the defendant *413 gives up important constitutional rights. Thus, the prosecutor must adhere to the terms of the agreement by recommending the agreed upon sentence. State v. Van Buren, 101 Wash.App. 206, 211, 2 P.3d 991, review denied, 142 Wash.2d 1015, 16 P.3d 1265 (2000); Sledge, 133 Wash.2d at 839, 947 P.2d 1199. Although the prosecutor need not enthusiastically make the sentencing recommendation, he must not undercut the plea agreement, either explicitly or implicitly by conduct indicating an intent to circumvent the agreement. Van Buren, 101 Wash.App. at 213, 2 P.3d 991. The test is whether the prosecutor contradicts, by word or conduct, the State's recommendation for a standard range sentence. Id.
¶ 11 A breach may be found when the prosecutor offers unsolicited information or argument that undercuts the State's obligations under the plea agreement. See State v. Xaviar, 117 Wash.App. 196, 200-02, 69 P.3d 901 (2003) (breach where prosecutor highlighted aggravating sentencing factors and other charges not pursued, and called the defendant "one of the most prolific child molesters that this office has ever seen"); Van Buren, 101 Wash.App. at 217, 2 P.3d 991 (breach where prosecutor made only fleeting reference to sentencing recommendation and highlighted three aggravating factors to justify exceptional sentence); State v. Jerde, 93 Wash.App. 774, 777-78, 970 P.2d 781 (breach where prosecutor emphasized aggravating factors despite obligation to make mid-range sentencing recommendation), review denied, 138 Wash.2d 1002, 984 P.2d 1033 (1999). A prosecutor, however, does not breach a plea agreement by merely advising the court of witnesses who wish to testify at a sentencing hearing. State v. Davis, 43 Wash.App. 832, 837, 720 P.2d 454, review denied, 106 Wash.2d 1017 (1986).
¶ 12 In determining whether the prosecutor violated his duty to adhere to a plea agreement, we review the entire sentencing record and ask whether the prosecutor contradicted by words or conduct the State's recommendation for a standard range sentence. State v. Williams, 103 Wash.App. 231, 236, 11 P.3d 878 (2000), review denied, 143 Wash.2d 1011, 21 P.3d 292 (2001). Neither good motivations nor a reasonable justification will excuse a breach. Van Buren, 101 Wash.App. at 213, 2 P.3d 991. When a prosecutor breaches a plea agreement, the appropriate remedy is to remand for the defendant to choose whether to withdraw the guilty plea or seek enforcement of the State's agreement. Id. at 217, 2 P.3d 991.
¶ 13 Mr. Halsey first argues the prosecutor breached the plea agreement by failing to recommend the agreed upon 160-month sentence. He asserts that the prosecutor merely advised the court of the terms of the plea agreement, but did not recommend or endorse the sentence, thus undermining the plea agreement. The record belies this assertion. The prosecutor plainly conveyed the State's recommendation for a 160-month sentence, stating: "[u]nder the terms of the plea agreement, the state noted that the defendant had one prior violent sex felony adjudication as a juvenile, and the state agreed to recommend one hundred and sixty (160) months incarceration, followed by a lifetime of supervision. . . . That is the state's position, Your Honor." RP (Aug. 22, 2003) at 4-5. No statement by the prosecutor evinced any intent to circumvent or contradict the plea agreement.
¶ 14 Mr. Halsey next argues that the prosecutor breached the plea agreement by presenting the court with a letter from C.W.'s mother, Ms. Wilman. He argues that as a proponent of the letter, the prosecutor effectively endorsed its contents, which implicitly undermined the agreed-upon sentencing recommendation. We disagree. The record reflects that, after recommending a standard range sentence, the prosecutor advised the court that he had been provided with a letter from Ms. Wilman, and he had provided a copy to defense counsel. Defense counsel told the court that he had no objection to the letter being submitted on behalf of the State. This did not implicitly undercut the sentencing recommendation. As an officer of the court, the prosecutor appropriately informed the court that the State had received a letter from an interested party who wished to make a statement. This is comparable to a prosecutor advising the court of *414 witnesses who wish to be heard at sentencing. Davis, 43 Wash.App. at 837, 720 P.2d 454. The prosecutor did not breach the plea agreement by this conduct.
¶ 15 Mr. Halsey also argues the prosecutor breached the plea agreement by referring the court to portions of the prosecutor's declaration. During sentencing the court recited findings of fact and conclusions of law in support of the exceptional sentence. Defense counsel objected to the court's findings as unsupported by the evidence. Specifically, defense counsel objected that the record did not support the court's finding of fact that there was "[m]uch blood from victim's vaginal area, tearing, and bruising thereto." RP (Aug. 22, 2003) at 24. The court referenced the presentence investigation report and stated:
Page one of the PSI reads at paragraph three:
She transported her daughter to the emergency room at St. Joseph's Hospital for medical care.
Following investigation, it was learned from the medical staff that there was vaginal bleeding, tearing and bruising, and that this was caused, according to the doctor, by forcible penetration.
So, I got it off page one of the PSI.
RP (Aug. 22, 2003) at 26. The prosecutor then referred the court to the "prosecutor's declaration," which also referenced that police officers were notified C.W. had bleeding, tearing and bruising in the vaginal area. The court responded: "I thought I had remembered it from somewhere else in the file as well." RP (Aug. 22, 2003) at 26-27.
¶ 16 Mr. Halsey argues that, because the declaration contained factual assertions supporting the court's findings of fact on the exceptional sentence, by pointing the court to this part of the record, the prosecutor violated the State's obligation to recommend a standard range sentence. However, the prosecutor's comments concerning the declaration were made after the court had already sentenced Mr. Halsey to an exceptional sentence and defense counsel objected to the court's findings as unsupported by the evidence. The prosecutor, as an officer of the court, was merely fulfilling his duty of candor by directing the court's attention to relevant information in the court file. See State v. Talley, 134 Wash.2d 176, 183, 949 P.2d 358 (1998). The context of the prosecutor's remarks makes clear he was not seeking to bring additional information before the court; but rather assisting the court by identifying supporting facts for the sentence the court had already imposed. The prosecutor did not advocate for an exceptional sentence, nor derogate the recommended sentence. The prosecutor's words or conduct did not constitute a breach of the plea agreement.
B. Exceptional sentence
¶ 17 Mr. Halsey contends the court erred by imposing an exceptional sentence that was based on facts that were neither charged nor found by a jury beyond a reasonable doubt. He relies on Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), in which the United States Supreme Court held that a defendant has a constitutional right to have a jury determine whether the facts supporting an exceptional sentence have been proven beyond a reasonable doubt. Id. at 313-14, 124 S.Ct. 2531. Blakely concerned sentencing under former RCW 9.94A.390 (2000) (recodified at RCW 9.94A.535).
¶ 18 In State v. Clarke, 156 Wash.2d 880, 134 P.3d 188 (2006), our Supreme Court clarified Blakely in the context of exceptional sentences for nonpersistent sex offenders under RCW 9.94A.712. The defendant in Clarke was convicted of two counts of second degree rape, and sentenced to a maximum term of life imprisonment as required by RCW 9.94A.712. Id. at 883, 134 P.3d 188. This statute required the court to impose a minimum sentence in addition to a maximum sentence, and authorized an exceptional minimum sentence upon a finding of certain aggravating factors. Id. at 884, 134 P.3d 188.
¶ 19 Clarke appealed his exceptional sentence, arguing that Blakely required any aggravating factors to be proved to a jury. Id. at 885, 134 P.3d 188. Division One of this court held that the trial court's findings on aggravating factors did not violate the Sixth Amendment under Blakely, because the exceptional *415 minimum term did not exceed the statutory maximum term of life imprisonment. State v. Clarke, 124 Wash.App. 893, 902, 103 P.3d 262 (2004).
¶ 20 The Supreme Court affirmed, concluding an exceptional minimum sentence pursuant to RCW 9.94A.712 can be based on the sentencing judge's factual findings regarding aggravating factors. Clarke, 156, Wash.2d at 886-87, 134 P.3d 188. The Court determined that the Sixth Amendment right to a jury finding on factors that increase the penalty for a criminal offense is not violated by the indeterminate sentencing scheme of RCW 9.94A.712, because the exceptional minimum sentence does not exceed the statutory maximum. Id. at 891-94, 134 P.3d 188.
¶ 21 Mr. Halsey was convicted in 2003. Under former RCW 9.94A.712 (2002) "[a]n offender who is not a persistent offender shall be sentenced under this section if the offender . . . is convicted of . . . rape of a child in the first degree." Pursuant to former RCW 9.94A.712(3):
Upon a finding that the offender is subject to sentencing under this section, the court shall impose a sentence to a maximum term consisting of the statutory maximum sentence for the offense and a minimum term either within the standard sentence range for the offense, or outside the standard sentence range pursuant to RCW 9.94A.535, if the offender is otherwise eligible for such a sentence.
First degree child rape is a class A felony. RCW 9A.44.073(2). The statutory maximum for such offense is life imprisonment. RCW 9A.20.021(1)(a).
¶ 22 Here, Mr. Halsey's standard range sentence based on his offender score of 3 was 120 to 160 months. The court sentenced Mr. Halsey to a minimum exceptional sentence of 720 months based on aggravating factors. However, Mr. Halsey's minimum exceptional sentence of 720 months did not exceed the statutory maximum of life imprisonment. Thus, under Clarke, the sentencing court was entitled to make factual findings on the aggravating factors, and imposition of the exceptional minimum sentence did not violate Blakely.
¶ 23 Mr. Halsey also contends his exceptional sentence was "clearly excessive." RCW 9.94A.535(1)(g).
¶ 24 In determining whether an exceptional sentence is clearly excessive, we ask whether the trial court abused its discretion by relying on an impermissible reason or unsupported facts, or whether the sentence is so long that, in light of the record, it shocks the conscience of the reviewing court. In other words, we must determine that no reasonable person would adopt the position taken by the trial court. State v. Ferguson, 142 Wash.2d 631, 651, 15 P.3d 1271 (2001); State v. Ross, 71 Wash.App. 556, 571-72, 861 P.2d 473, 883 P.2d 329 (1993), review denied, 123 Wash.2d 1019, 875 P.2d 636 (1994). We have considerable latitude in making this assessment:
Stated otherwise, the "clearly excessive prong" of appellate review under the sentencing reform act gives courts near plenary discretion to affirm the length of an exceptional sentence, just as the trial court has all but unbridled discretion in setting the length of the sentence. This necessarily follows from the lack of a legislative definition of "clearly excessive" and from the abuse-of-discretion standard of review.
State v. Creekmore, 55 Wash.App. 852, 864, 783 P.2d 1068 (1989), review denied, 114 Wash.2d 1020, 792 P.2d 533 (1990).
¶ 25. Here, Mr. Halsey was sentenced to an exceptional sentence of 720 months, based on several aggravating factors relating to the child victim. While this sentence is several times the standard range, this does not render it presumptively invalid. Exceptional sentences that have doubled or more than doubled the standard range have been upheld on numerous occasions. See, e.g., State v. Branch, 129 Wash.2d 635, 650, 919 P.2d 1228 (1996) (affirming 48 month sentence for first degree theft, which was more than 16 times the standard range sentence of 90 days); State v. Oxborrow, 106 Wash.2d 525, 535-36, 723 P.2d 1123 (1986) (upholding a 10 year sentence for first degree theft, 15 times more than the standard range); State v. Vaughn, 83 Wash.App. 669, 680-81, 924 P.2d 27 (1996) (upholding sentence that was 2½ times the standard range), *416 review denied, 131 Wash.2d 1018, 936 P.2d 417 (1997); State v. Smith, 82 Wash.App. 153, 167, 916 P.2d 960 (1996) (upholding sentence that was 3 times the standard range); State v. Bedker, 74 Wash.App. 87, 92, 871 P.2d 673 (holding that the sentence of 180 months for child rape, compared to standard range sentence of 72 to 96 months, was not clearly excessive), review denied, 125 Wash.2d 1004, 886 P.2d 1133 (1994); Creekmore, 55 Wash.App. at 864, 783 P.2d 1068 (upholding 720 month sentence for second degree murder despite a standard range of 144-192 months); State v. Harmon, 50 Wash. App. 755, 761-62, 750 P.2d 664 (upholding a 648 month sentence for first degree murder, which was 315 months longer than standard range sentence), review denied, 110 Wash.2d 1033 (1988). Given the factors the sentencing court considered, and respecting its discretion, we conclude that Mr. Halsey's 720 month sentence was not "clearly excessive."
C. Amendment of the restitution order
¶ 26 Mr. Halsey contends the court erred by amending the agreed order of restitution to increase the total amount of restitution. He argues that the amended restitution order was untimely because it was not entered within 180 days of his sentencing hearing.
¶ 27 We review a challenge to a restitution order for abuse of discretion. State v. Fleming, 75 Wash.App. 270, 274, 877 P.2d 243 (1994), appeal dismissed, 129 Wash.2d 529, 919 P.2d 66 (1996). An abuse of discretion occurs when the court's decision is "`manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" State v. Wilson, 100 Wash.App. 44, 47, 995 P.2d 1260 (2000) (quoting State v. Enstone, 137 Wash.2d 675, 679-80, 974 P.2d 828 (1999) (internal quotation marks omitted)). The court's authority to order restitution is statutory. RCW 9.94A.753(1). State v. Davison, 116 Wash.2d 917, 919, 809 P.2d 1374 (1991). When restitution is ordered, the court shall determine the amount due at the sentencing hearing or within 180 days, subject to certain exceptions not pertinent here. RCW 9.94A.753(1). The time limit is mandatory, although the court may continue the restitution hearing beyond the 180-day limit for good cause. Id.; State v. Johnson, 96 Wash.App. 813, 816, 981 P.2d 25 (1999). A motion for continuance must be made before the time limit has expired. Johnson, 96 Wash.App. at 816-17, 981 P.2d 25.
¶ 28 Here, the agreed restitution order was entered within 180 days of sentencing. After the 180-day limit had expired, the prosecutor requested modification of this order to include the cost of counseling for C.W. The prosecutor argued that at the time that the agreed restitution order was entered, he did not have an amount for the cost of counseling. Under RCW 9.94A.753(4), "[t]he portion of the sentence concerning restitution may be modified as to amount, terms, and conditions during any period of time the offender remains under the court's jurisdiction, regardless of the expiration of the offender's term of community supervision and regardless of the statutory maximum sentence for the crime."
¶ 29 At the time of the amended restitution hearing, Mr. Halsey was still under the court's jurisdiction. Because RCW 9.94A.753(4) permitted the trial court to modify the amount of restitution, it had the authority to impose an amended restitution order.

CONCLUSION
¶ 30 We conclude that the prosecutor's words or conduct at the sentencing hearing did not constitute a breach of the plea agreement. Moreover, Mr. Halsey's exceptional sentence was constitutionally imposed under Clarke, 156 Wash.2d 880, 134 P.3d 188, and was not clearly excessive. Because at the time of the amended restitution hearing Mr. Halsey was still under the court's jurisdiction, the court had the authority to enter the amended restitution order requiring Mr. Halsey to pay for the victim's counseling costs.
¶ 31 Affirmed.
WE CONCUR: SCHULTHEIS, A.C.J., and KULIK, J.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).