# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74422-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MICHAEL DAVID MURRAY, | ) | |
| Appellant. | ) | FILED: March 6, 2017 |
| | ) | |

APPELWICK, J. — Murray was convicted of three counts of indecent exposure. At sentencing, Murray argued that the court should take his brain injury into consideration. The court imposed an exceptional sentence of 36 months incarceration, because the crimes were committed with a sexual motivation and shortly after his release from incarceration. Murray appeals. We affirm.

## FACTS

Michael Murray was released from jail on February 17, 2015. In March 2015, Murray exposed himself to multiple people. On March 4, 2015, S.L. was working at a retirement home in Seattle. S.L. noticed Murray looking at her from behind a wall. Then, he moved out from behind the wall, about 20 feet away from S.L. His pants were at about his mid-thigh, and he was looking at S.L. while stroking his penis.

The next day, March 5, C.Y. was returning to work in downtown Seattle after her lunch break. Murray rode the elevator with C.Y. After two other people exited the elevator, C.Y. noticed that Murray's penis was exposed through the zipper of his pants.

A few days later, on March 9, L.S. was working at her hair salon in downtown Seattle. She noticed Murray standing in the hallway multiple times during the day. In the afternoon, L.S. was cutting a female client's hair when the client began screaming. L.S. looked into the hallway and saw Murray with his penis in his hand, masturbating.

Murray was charged with three counts of indecent exposure for these events. The State alleged that one of the purposes for which Murray committed the crimes was for sexual gratification. And, it alleged that Murray committed the offenses shortly after being released from incarceration.

At trial, Murray pursued a diminished capacity defense. Murray argued that cognitive deficits due to a stroke and resulting brain damage prevented him from understanding that his actions were likely to cause reasonable affront or alarm. Murray was convicted as charged. The jury specifically found that both aggravating factors, sexual motivation and rapid recidivism, were met for all three offenses.

The standard sentence range for Murray's offenses was 0-12 months. Due to the jury's findings that Murray committed the offenses with sexual motivation and shortly after being released from incarceration, the State sought an exceptional sentence of 48 months. Murray asked the court for an exceptional

sentence of 365 days on the first two counts, plus a consecutive 120 days on the third count. The purpose of this request was to ensure that Murray would have time to work with the release planning staff prior to his release. At the sentencing hearing, the court concluded,

> Well, I understand that there is some medical basis for what Mr. Murray's problems are, but it's not clear that there is any way to protect the community other than locking him up, and so while I don't think we need to go to quite the extent that the prosecutor's recommending, I do think that a substantial prison sentence is merited.

The court sentenced Murray to 36 months. Murray appeals.

## DISCUSSION

Murray challenges the exceptional sentence imposed by the trial court. He contends that neither the sexual motivation nor the rapid recidivism aggravating factors supports the exceptional sentence. Alternatively, he argues that the rapid recidivism factor is unconstitutionally vague. Lastly, Murray argues that even if the aggravating factors technically apply here, the exceptional sentence is clearly excessive given his brain injury.

RCW 9.94A.585(4) dictates this court's review of an exceptional sentence:

> To reverse a sentence which is outside the standard sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

This statute establishes three prongs, each with a different standard of review. State v. Law, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). First, we review under a clearly erroneous standard whether evidence in the record supports the reasons

given by the sentencing judge. Id. Second, we review de novo whether the reasons justify a departure from the sentence range. Id. Third, we review for an abuse of discretion whether the sentence is clearly excessive or too lenient. Id.

## I. Invited Error

The State contends that Murray has waived any challenge to the exceptional sentence, because he himself sought an exceptional sentence. At sentencing, Murray stated,

> We're asking for an exceptional sentence, although I don't believe one is actually warranted, but we're asking for one because we want there to be some additional time in the jail so that [Murray] can work with the release planning staff to come up with a release plan that ensures community protection.

Specifically, Murray asked for a 365 day sentence on the first two counts, with 120 consecutive days imposed for count three.

Murray construes this as a request for a downward departure from the standard sentence range, which is 0-12 months. But, the sentences for the three counts would presumptively be served concurrently. RCW 9.94A.589(1)(a). Murray asked that the sentence for count three run consecutively to the other counts. And, Murray clearly stated at sentencing that additional time in jail was warranted to assist Murray with a release plan. This language is not consistent with a request for a downward departure.

Under the invited error doctrine, a defendant may not set up an error at trial and then challenge that error on appeal. State v. Momah, 167 Wn.2d 140, 153, 217 P.3d 321 (2009). To determine whether the invited error doctrine applies, courts examine whether the defendant affirmatively assented to the error,

4

materially contributed to it, or benefited from it. Id. at 154. Courts have applied this doctrine where a defendant urged the court to impose an exceptional sentence and acknowledged the application of an aggravating factor. See State v. Smith, 82 Wn. App. 153, 162-63, 916 P.2d 960 (1996).

But, even though Murray did request an exceptional sentence, he did not acknowledge or admit that either aggravating factor supported the imposition of an exceptional sentence. Rather, Murray explicitly stated that the defense did not believe that an exceptional sentence was actually warranted as punishment. That makes this case different from Smith, where the defendant recognized that the aggravating factor applied. 82 Wn. App. at 162-63. We conclude that neither the invited error doctrine nor waiver bars Murray from challenging the exceptional sentence on appeal.

## II. Sexual Motivation

Murray challenges both aggravating factors as insufficient to support the exceptional sentence. First, Murray contends that indecent exposure is an inherently sexual offense, so the sexual motivation aggravating factor cannot apply.

A finding of sexual motivation pursuant to RCW 9.94A.835 is one aggravating factor that can support an exceptional sentence. RCW 9.94A.535(3)(f). RCW 9.94A.835(2) provides that the jury must find a special verdict as to whether the defendant committed the crime with a sexual motivation. It further states, "[t]his finding shall not be applied to sex offenses as defined in RCW 9.94A.030." Id. RCW 9.94A.030(47) specifically names offenses that qualify

as sex offenses. Indecent exposure is not a named sex offense under RCW 9.94A.030(47).

An exceptional sentence may not be based on factors inherent to the offense for which the defendant was convicted. State v. Thomas, 138 Wn.2d 630, 636, 980 P.2d 1275 (1999). The sexual motivation aggravating factor serves to hold offenders who commit sexually motivated crimes more culpable than those who commit the same crimes without sexual motivation. Id. Thus, the sexual motivation factor can apply only to offenses that are not inherently sexual. Id.

Murray argues that the crime of indecent exposure is inherently sexual. A person commits indecent exposure "if he or she intentionally makes any open and obscene exposure of his or her person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm." RCW 9A.88.010(1). The statute does not define "obscene." As such, Washington courts have clarified what constitutes "open and obscene exposure." See, e.g., State v. Galbreath, 69 Wn.2d 664, 668, 419 P.2d 800 (1966); State v. Vars, 157 Wn. App. 482, 491, 237 P.3d 378 (2010).

In Galbreath, the defendant argued that the indecent exposure statute was unconstitutionally vague, because the terms "indecent" and "obscene" do not clearly define the proscribed conduct. 69 Wn.2d at 666-67. The court disagreed, noting that these words are common words with commonly understood meanings. Id. at 668. The court noted that this phrase has long meant "a lascivious exhibition of those private parts of the person which instinctive modesty, human decency, or

6

common propriety require shall be customarily kept covered in the presence of others." Id.

The Court of Appeals reaffirmed this definition in Vars, where the defendant argued that the State did not prove indecent exposure, since no witnesses observed his naked genitalia. 157 Wn. App. at 489. The court rejected Vars's argument, reasoning, "the gravamen of the crime is an intentional and 'obscene exposure' in the presence of another that offends society's sense of 'instinctive modesty, human decency, and common propriety.' "[1] Id. at 491 (quoting Galbreath, 69 Wn.2d at 668).

Murray relies on State v. Steen, 155 Wn. App. 243, 228 P.3d 1285 (2010) to support his argument. There, the trial court instructed the jury, " ' "Obscene exposure" means the exposure of the sexual or intimate parts of one's body for a sexual purpose.' " Id. at 246-47 (emphasis added). Steen argued that this instruction contained a judicial comment on the evidence. Id. at 246. The Court of Appeals disagreed, ruling that the instruction was a neutral and accurate statement of the law. Id. at 247.

---

[1] Murray notes that under Galbreath, a "lascivious" exhibition is one that is sexual in nature. Webster's Dictionary defines "lascivious" as "inclined to lechery; lewd, lustful" or "tending to arouse sexual desire: libidinous, salacious." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1274 (2002) (capitalization omitted). And, the Washington Supreme Court has noted that "lascivious" and "indecent" are synonyms connoting " 'wicked, lustful, unchaste, licentious, or sensual design.' " State v. Queen, 73 Wn.2d 706, 710, 440 P.2d 461 (1968) (quoting Boles v. State, 158 Fla. 220, 221, 27 So. 2d 293 (1946)). But, we note that Washington courts have not interpreted "open and obscene" exposure as requiring sexual gratification. Instead, courts have more generally described indecent exposure as requiring an exhibition that offends a societal sense of modesty, decency, and propriety. See, e.g., Galbreath, 69 Wn.2d at 668; Vars, 157 Wn. App. at 491. We decline to read a sexual purpose into this meaning.

7

The Steen court reasoned that the jury instruction was an accurate statement of law, because it was based on RCW 9A.44.010(2) and former RCW 9.94A.030(43) (2008), recodified as, RCW 9.94A.030(48) (LAWS OF 2015, ch. 287, § 1). Id. at 247. But, neither statute defines "obscene." RCW 9A.44.010(2) defines "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." And, RCW 9.94A.030(48) defines "sexual motivation" as meaning "that one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification." Since Steen was charged with indecent exposure with sexual motivation, it is unsurprising that the trial court included language relating to sexual motivation in the jury instruction. See 155 Wn. App. at 245. But, Steen did not address a challenge to an exceptional sentence based on the sexual motivation factor. It is not controlling on this point.

Neither the plain language of RCW 4.84.185 nor the case law requires that the indecent or lascivious exhibition of genitalia be for the purpose of sexual gratification. Under Galbreath and Vars, an "open and obscene" exposure requires only a lascivious and indecent display of genitalia. It does not require additional evidence of sexual gratification. Therefore, we conclude that sexual motivation is not inherent in the crime of indecent exposure. The sexual motivation aggravating factor properly supports Murray's exceptional sentence.

III.    Rapid Recidivism

Murray argues that he did not commit the crimes "shortly after" being released from incarceration. He suggests that his specific circumstances indicate

8

that he was attempting to respect and obey the law, so he did not show the disdain for the law necessary to satisfy this aggravating factor.

Under RCW 9.94A.535(3)(t), one factor that can support an exceptional sentence is that "[t]he defendant committed the current offense shortly after being released from incarceration." This factor is premised on the idea that committing a new offense shortly after release from incarceration demonstrates a greater disdain for the law than would usually be the case. State v. Butler, 75 Wn. App. 47, 54, 876 P.2d 481 (1994); State v. Combs, 156 Wn. App. 502, 506, 232 P.3d 1179 (2010).

Murray argues that because he attempted to get help prior to committing the offenses, he did not demonstrate the necessary disdain for the law. He contends that his visit to Sound Mental Health on March 2, 2015 demonstrates a desire to obey, not disregard, the law. But, the Court of Appeals has made clear that disdain for the law is the justification for this aggravating factor, not an additional element that must be met. State v. Williams, 159 Wn. App. 298, 314, 244 P.3d 1018 (2011). The statutory requirement is simply that the new offense was committed "shortly after" release. Combs, 156 Wn. App. at 506.

Even so, Murray contends that the unique circumstances of his medical condition indicate that he did not commit the offense shortly after incarceration. He relies on Combs, where the court noted that what constitutes a short period of time "will vary with the circumstances of the crime involved." Id. Where an offense may take a long time to plan or occur, the time period constituting "shortly after" incarceration may be longer. Id. at 507. But, Combs did not suggest that what

constitutes a short period of time after incarceration depends on the individual offender. It noted only that the period of time may vary based on the offense.

Here, Murray committed a string of new offenses just weeks after his release. He was released on February 17, and the new offenses occurred on March 4, 5, and 9. Courts have upheld exceptional sentences based on the rapid recidivism factor where the length of time between release and re-offense was greater than three weeks. See, e.g., State v. Saltz, 137 Wn. App. 576, 585-86, 154 P.3d 282 (2007) (offense occurred one month after release); State v. Zigan, 166 Wn. App. 597, 605-06, 270 P.3d 625 (2012) (offense occurred two months after release). We conclude that the rapid recidivism aggravating factor supports Murray's exceptional sentence.

IV.   Vagueness

Murray argues that if the rapid recidivism aggravating factor can be applied to the facts of this case, then the factor is unconstitutionally vague. He contends that the statute does not give sufficient notice that a person with brain damage commits an offense shortly after release when he asks for help before reoffending.

We review de novo the constitutionality of a statute. State v. Eckblad, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004). The court evaluates vagueness challenges in light of the particular facts of each case, unless the First Amendment is implicated. Id. A statute is unconstitutionally vague "if either it fails to define the offense with sufficient precision that a person of ordinary intelligence can understand it, or if it does not provide standards sufficiently specific to prevent arbitrary enforcement." Id.

10

The State argues that the aggravating factors are not subject to a vagueness challenge due to Washington Supreme Court precedent. It relies on State v. Baldwin, 150 Wn.2d 448, 78 P.3d 1005 (2003). Baldwin dealt with a challenge to two sentencing statutes.[2] Id. at 458. The court determined that since the sentencing statutes did not define conduct or allow for arbitrary arrest and prosecution, the due process considerations underlying the void for vagueness doctrine did not apply. Id. at 459.

But, Murray contends that after the United States Supreme Court's recent decision in Johnson v. United States, ___ U.S. ___, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), Baldwin is no longer good law. Johnson involved a void for vagueness challenge to the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B). Id. at 2555-56. The ACCA increases the prison term to 15 years to life for a person with three or more convictions for a serious drug offense or violent felony. Id. at 2555. The statute defined "violent felony" as a crime that had the use, threatened use, or attempted use of physical force as an element, or "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. at 2555-56 (emphasis added). The Supreme Court determined that the emphasized text, known as the residual clause, was unconstitutionally vague, because it left grave uncertainty about how to estimate the risk posed by a

---

[2] Specifically, Baldwin challenged former RCW 9.94A.120(2) (2000), which provided that a standard sentence range must be imposed unless the court finds substantial and compelling reasons to justify an exceptional sentence, and former RCW 9.94A.390 (2000), which listed mitigating and aggravating factors that can support an exceptional sentence. Baldwin, 150 Wn.2d at 458-59.

11

crime. Id. at 2557. This vagueness was demonstrated by the pervasive disagreement amongst courts as to the appropriate inquiry under this clause. Id. at 2560.

Johnson does not require us to determine that Baldwin is no longer good law. The ACCA defined conduct that required a minimum of 15 years in prison. Id. at 2555. RCW 9.94A.535 does not require an exceptional sentence. Instead, the jury must find the alleged factor is satisfied based on the evidence. RCW 9.94A.537(6). Then, the trial court must still decide whether the aggravating factor is a substantial and compelling reason to justify an exceptional sentence. Id. Thus, the reasoning of Baldwin applies: RCW 9.94A.535 does not dictate the penalties associated with criminal conduct or force citizens to guess at the consequences that might occur when one engages in prohibited conduct. See Baldwin, 150 Wn.2d at 459. RCW 9.94A.535's rapid recidivism factor is not subject to a void for vagueness challenge.

V. Clearly Excessive

Lastly, Murray argues that even if the aggravating circumstances technically supported the exceptional sentence, the sentence is clearly excessive in light of his brain injury. He contends that the court should consider his efforts to lessen the risk he posed of reoffending. Additionally, Murray suggests that his case is comparable to the rationales involved in sentencing juveniles differently from adults. He argues that like a juvenile, his impaired brain functioning makes him less culpable than a healthy adult.

12

This court reviews whether a sentence is clearly excessive for an abuse of discretion. State v. Ritchie, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995). The trial court abuses its discretion in setting the length of an exceptional sentence by relying on an impermissible reason or by imposing a sentence that is so long that, in light of the record, it shocks the conscience of the reviewing court. Id. at 395-96. A sentence that shocks the conscience is one that no reasonable person would impose. State v. Knutz, 161 Wn. App. 395, 411, 253 P.3d 437 (2011). We have wide latitude in affirming the length of an exceptional sentence. State v. Halsey, 140 Wn. App. 313, 325, 165 P.3d 409 (2007).

Murray's brain injury very well could have played a role in his lack of inhibition.[3] However, Murray still committed three separate instances of indecent exposure within one week. These three instances were all committed within three weeks of his release from incarceration. All three offenses indicated that Murray was not merely exposing himself in public places. Instead, he waited for opportune moments—when S.L. and C.Y. were alone and when L.S. was with a female client. This conduct suggests intentional predatory behavior, not a failure of inhibition. Considering these facts, the trial court determined that the public needed to be

---

[3] The State argues that Murray's history of sexually motivated crimes prior to his stroke undercuts his argument that his brain injury contributed to the current offenses. Before his stroke in 2008, Murray was convicted of lewdness and three instances of lewdness involving a child. At sentencing, the State asked the court to consider Murray's long history of sexually motivated offenses, including those that occurred prior to his stroke. Because indecent exposure is an unranked felony, these offenses would not factor into Murray's offender score for sentencing. See RCW 9.94A.515; Steen, 155 Wn. App. at 247-49. It is unclear from the record whether the trial court took these previous convictions into consideration.

protected from Murray, and there was no clear way to do so other than incarceration.

And, while the court imposed an exceptional sentence, it determined that the sentence need not be as long as the State's requested 48 months. Instead, it imposed 36 months. The standard sentence range was 0-12 months. Courts have upheld exceptional sentences that have doubled or more than doubled the standard sentence range. See Halsey, 140 Wn. App. at 325-26.

The trial court's determination that the public needed to be protected from Murray was reasonable, and the 36 month exceptional sentence serves this purpose. The exceptional sentence imposed here does not shock the conscience. Therefore, we uphold Murray's sentence.

We affirm.

WE CONCUR:

Trickey, ACJ

Cox, J.

2017 MAR 16 AM 9:08
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED