# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48732-2-II |
| Respondent, | |
| v. | |
| JEFFERY MELVIN COVER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Jeffery Melvin Cover was convicted of three counts of third degree rape of a child, with each count aggravated by an ongoing pattern of sexual abuse and an egregious lack of remorse. Cover was sentenced to an exceptional sentence of 180 months.

On appeal, Cover argues (1) the *corpus delicti* rule precludes his admission to having sexual contact with the victim; (2) there is insufficient evidence to support his conviction on the third count of third degree rape of a child; (3) the trial court erred in admitting statements the victim made as prior consistent statements; (4) the prosecutor committed misconduct by (a) arguing facts not in evidence, (b) misstating the burden of proof, and (c) telling the jury Cover was incarcerated; (5) the language used in the jury instruction and corresponding special verdict form allowed the jury to find the ongoing pattern of sexual abuse aggravator based on legal conduct; (6) the sentencing court improperly imposed (a) an exceptional sentence based on Cover's legal conduct and (b) a clearly excessive sentence; (7) he received ineffective assistance of counsel when

his attorney failed to object to (a) the admission of Cover's confession, (b) the jury instruction on the ongoing pattern of abuse aggravator and corresponding special verdict form, and (c) the prosecutor's reference to Cover's incarceration; (8) the cumulative effect of the errors deprived him of a fair trial; and (9) appellate costs should not be imposed against him. In a statement of additional grounds (SAG), Cover challenges: (1) whether the trial court abused its discretion in denying his motion for a mistrial; (2) the calculation of his offender scores; and (3) the imposition of consecutive sentences.

We hold that none of the issues Cover raises in his direct appeal or in his SAG merit reversal. Therefore, we affirm.

## FACTS

### A. THE ABUSE

S.M.[1] was born in October 1991. Cover was born in February 1975.

S.M. grew up living with her grandmother, Sandra Cover,[2] and her grandmother's husband Mike Cover, Sr. Mike was Cover's uncle. S.M. and Cover lived in the same mobile home park in Washougal, Washington. S.M. referred to Cover as her cousin or as "Uncle Jeff." 2 Verbatim Report of Proceedings (VRP) at 274.

In the summer of 2006, S.M. was staying at Cover's house, where Cover lived with his sister. Cover came home drunk and laid next to S.M. on the couch. Cover began kissing S.M.,

---

[1] Pursuant to General Order 2011-1, initials are used when referring to the minor victim.

[2] Many individuals involved share the last name Cover. For clarity, we refer to the appellant by his last name, and all others with the same last name by their first names. We intend no disrespect.

and touching her body and breasts. Cover then took S.M. to his bedroom and had sexual intercourse with her.

Thereafter, the sexual contact between S.M. and Cover became frequent. S.M. testified that Cover would come over to S.M.'s house and ask Sandra or Mike if S.M. could come baby sit for his girlfriend, Julie Barnett. Barnett also lived in the mobile home park. Cover would then take S.M. to either his house or Barnett's house, where he would then have intercourse with S.M. On one particular occasion, S.M. was at Cover's house and he performed oral sex on her while she performed oral sex on him.

After that incident, at the end of February or the beginning of March in 2007, while S.M. was watching Barnett's kids and drinking beers with Cover, Cover asked Barnett if Barnett would "fool around" with him and S.M. 1 VRP at 189. Barnett eventually agreed, and the three went to Barnett's bedroom. In the bedroom, Cover had sexual intercourse with S.M. and performed oral sex on S.M. Barnett also had sexual contact with S.M.

B.    THE ABUSE IS DISCLOSED

Megan Cover was S.M.'s aunt. Megan lived in the same mobile home park as S.M. At an Easter party in 2007, S.M. asked Megan if Barnett had a sexually transmitted disease. Nothing more was said about it that day, but a couple days later, Megan asked S.M. why she was curious about Barnett's sexual health. At that point, S.M. began crying and disclosed that she and Cover were having sex and then described the incident with Barnett in Barnett's bedroom.

Megan called the police, and the police responded within 15 to 20 minutes. The responding officers were Sergeant Bradley Chicks and Officer Kim Yamashita. The officers interviewed S.M. at Megan's house.

3

C.      COVER MARRIES S.M.

The State filed criminal charges against Cover and Barnett in April or May of 2007.  After the charges were filed, Cover's father, Sandra, Mike, and Cover decided that Cover and S.M. should marry so that Cover would not get in trouble.  They decided that Cover and S.M should go to Mississippi to be married.  Sandra and Mike took S.M. out of school and flew her to Mississippi.  Cover drove to Mississippi with his father and married S.M. in Mississippi when S.M. was 15 years old.  At the time of trial in 2016, S.M.'s highest level of education completed remained the eighth grade.

After Cover married S.M., S.M. "hid out at [Cover's] dad's house" in California "[be]cause everyone was looking for [S.M.]."  2 VRP at 199.  After an unknown length of time, but spanning several months, Cover called and said the charges had been dismissed.  S.M. then took a bus from California back to Washougal.

Upon her return to Washougal, Cover decided to marry S.M. a second time, "to make sure that [Cover and S.M. were] married."  2 VRP at 200.  On or about S.M.'s 16th birthday, Cover married S.M. in Idaho.

D.      CRIMINAL CHARGES AGAINST COVER ARE FILED AGAIN

On July 30, 2015, the State charged Cover a second time for his conduct against S.M.  The charging information alleged three counts of third degree rape of a child.  The information was subsequently amended to allege three counts of third degree rape of a child, with each count having occurred between April 1, 2006 and April 14, 2007.  The case proceeded to trial on February 8, 2016.

4

E.      RELEVANT POINTS OF THE TRIAL

        1.      Testimony

At trial, S.M. testified that there were several other instances of sexual intercourse that occurred prior to her marriage to Cover. She described a time at Cover's house, sometime after the incident involving Barnett, where Cover had sexual intercourse with her. In all, S.M. estimated Cover had sexual intercourse with her 10 to 20 times before the police were called.

Cover sought to impeach S.M.'s testimony by introducing a recantation letter. S.M. testified that the letter was written in her handwriting, but she did not recall writing the letter and statements made in the letter were false.

To rehabilitate S.M.'s credibility, the State sought to introduce prior statements S.M. made to Megan and the responding officers that were consistent with S.M.'s testimony at trial. Specifically, the State sought to introduce testimony of what S.M. had told them about the on-going sexual relationship with Cover. Defense counsel agreed that such testimony was appropriate, saying "I'm not disagreeing with what [the State is] saying—they can use [ER] 613 for this purpose." 2 VRP at 264. Defense counsel continued, "I would agree that we have impeached her with this letter and so theoretically the court can allow for this witness and other witnesses through Rule 613 to rehabilitate her as to prior consistent statements with her testimony from today," and then asked the court to limit the testimony and not allow substantive evidence to be presented. 2 VRP at 265. The trial court ruled the rehabilitative testimony would be admitted with the limitation that the "witness may be asked about the prior disclosure but we'll limit it to instances—or at least the acknowledgement that [S.M.] indicated that she had sex with the

Defendant and that she also may have had sex with the Defendant and Julie [Barnett]." 2 VRP at 268.

Chicks and Yamashita also testified at Cover's trial. Both testified that when they interviewed S.M., S.M. disclosed to them that Cover had been having sexual intercourse with her and that on one occasion both Cover and Barnett had sexual intercourse with her. Chicks also testified that S.M. told him about having oral sex with Cover and that she detailed the first time Cover had sexual contact with her. When asked what S.M. had disclosed regarding the first time Cover had sexual contact with S.M., Chicks stated, "Yes she was laying on the couch—it was the summer. She described it June or July of 2006. She would have been fourteen years old and she was awakened on the couch with him coming in." 2 VRP at 325.

At this point, Cover moved to strike and for a mistrial. Cover argued that this warranted a mistrial, or at least the statement to be stricken, because S.M. had not testified as to the time of the year that this incident occurred. The State argued that a mistrial was not warranted because evidence supporting that statement and the time of year had already been ruled admissible, as statements made by a party opponent, and would be introduced shortly. The trial court granted the motion to strike and denied the motion for mistrial. The trial court instructed the jury to "disregard the statement that the—[S.M.] may have been fourteen—that the incident may have occurred in the summer—June—July of the prior year—2006." 2 VRP at 329.

A short time later, Chicks testified that when he interviewed Cover, Cover told him that the first time he had sexual contact with S.M. had been in the summer of 2006. No objection was made.

Chicks further testified that during his interview with Cover, Cover initially denied having a sexual relationship with S.M., but eventually asked, "[I]f I tell you the truth what's in it for me— will you let me go?" 2 VRP at 339. Cover then admitted that he had touched and kissed S.M. on the couch. About an hour and a half later, as law enforcement was preparing to transport Cover to jail, Cover admitted to Chicks that he had a sexual relationship with S.M., and that the last time he had sex with her was April 14, 2007, in Barnett's bedroom. Cover also admitted to the time he had sexual intercourse with S.M. and Barnett.

After the State rested, the defense called Shannon Patton. Patton was Cover's current fiancé. She testified that she knew Cover and S.M. when they were married, and S.M. had told Patton that Cover and S.M. did not have sex until they were married. On cross-examination, the State asked Patton if she had "spoken with the Defendant on the phone since he's been in custody at the Clark County Jail" and if she knew that those phone calls were recorded. 3 VRP at 449-50. Cover did not object. Patton answered that she had spoken to Cover and she did know the calls were recorded.

2.      Closing Arguments

During the State's closing, the prosecutor argued:

> So Count Three—the Defendant himself actually gives us the dates—the exact date for Count Three. And you can recall Sgt. Chicks testified that the Defendant started admitting to him what happened—admitted to him that he was in this relationship with [S.M.]—that he loved her—he couldn't help it and yes he's been having sex with her.
>
> He admitted the last time they had sex was Saturday, April—let me make sure I'm right—April 14th, 2007. They [Chicks and Cover] were having this conversation—I believe—on April 21st—just about a week later and the Defendant admits that that was the last time he had sex with her. That he picked her up early in the morning and brought her to Julie's. That's consistent with what [S.M.] told

7

us. Again [S.M.] couldn't remember the exact dates but she said that after the threesome the Defendant took her to Julie's house to have sex multiple times—and he took her back to his house to have sex as well.

> She said that he would pick her up in the morning and bring her over to Julie's house while Julie was at work and Julie's kids would be asleep or in their rooms. Well that's what the Defendant said happened on the 14th. He said he picked up [S.M]—they went to the house and Julie's kids were asleep during that incident.

> . . . .

> Now these aren't the only incidents [S.M.] describes. In addition to these kind of three separate and distinct times that they had sexual intercourse as defined here she also describes that they had oral sex on occasion.

> She described—calling what she called 69 where she gave him oral sex and he gave her oral sex at the same time. She said that that happened before the threesome with Julie Barnett. And she described that he had sex with her at his house as well.

3 VRP at 493-95.

The defense argued in closing, "This case ultimately comes down to the words of [S.M.] . . . . It ultimately comes down to her word." 3 VRP at 501. The defense then proceeded to point out all of the pieces of the abuse that S.M. could not remember or had recanted and argued that Megan did not like Cover or Barnett.

In rebuttal, the prosecutor responded,

> Now for the defense's theory to be true—that this didn't happen—we would have to have two false confessions—the Defendant and the Ms. Barnett. We'll get into specifics.

> We would have to have two people that are saying—that are talking about these sex acts that are making these accusations— two separate times—nine years apart. We would have to have [S.M.] not only lying to you today but also lying back in 2007.

And Julie Barnett would have to be lying today and also in 2007. We would have to have Megan being the mastermind behind this whole thing.

3 VRP at 522.

F.    VERDICT AND SENTENCE

The jury convicted Cover of all three counts of third degree rape of a child. The jury also found by special verdict the aggravating factors that each count was committed as "part of an ongoing pattern of sexual abuse of the same victim under the age of 18 years manifested by multiple incidents over a prolonged period of time," and that "the defendant demonstrate[d] or display[ed] an egregious lack of remorse." Clerk's Papers (CP) at 163-68.

Cover's offender score was calculated to be 6. The Department of Corrections recommended an exceptional sentence upward in its presentence investigation report. At sentencing, the State requested an exceptional sentence upward. Defense counsel conceded that an exceptional sentence upward was appropriate. The defense counsel argued:

So the question for the court is not whether or not to impose punishment. Obviously punishment is appropriate and it's our contention that it's not even a question of whether the court should go above the standard range.

We think the fact that the jury found the aggravating factors that the court has a basis and—and perhaps even an obligation to go above the standard range of—up to sixty months. But I think forty-eight or forty-six to sixty months would be the standard range for each of the three counts.

We'd ask the court to consider exceeding the sixty months but by a smaller margin than as suggested either by the State or by the Department of Corrections. A hundred and eighty months or a hundred and fifty months would be—I think— an exceedingly long sentence for what was alleged and what was proven here— longer than we feel is necessary.

4 VRP at 557-58.

The sentencing court found an exceptional sentence upward was appropriate and sentenced Cover to 180 months. In making this finding, the sentencing court read RCW 9.94A.537 out loud, noted that the jury had found aggravating circumstances in this case, and explained that the court had authority to impose an exceptional sentence upward. The sentencing court discussed the purpose of the sentencing statute, stated that there was no doubt that Cover's acts were egregious and without remorse, and said:

> As I indicated both substantial and compelling reasons are the fact that you engaged in this sex with a fourteen year old—that you continued to engage in sex with this fourteen year old—that you married her—you took her to Mississippi—you took her to Idaho. You then had her move to California with her [sic]. At some point in time—you essentially abandoned her at some point in time.
>
> The facts I heard do not warrant any leniency whatsoever. I'm going to go ahead and follow the recommendations of the State.

4 VRP at 564-65. The sentencing court also entered written findings and conclusions for imposing the exceptional sentence, citing the jury's findings that the two aggravators applied to each of the three crimes, and concluding that there were substantial and compelling reasons to impose the exceptional sentence.

Cover appeals.

ANALYSIS

A.    *CORPUS DELICTI*

Cover argues that the *corpus delicti* rule precludes his admission to having sexual contact with S.M. on April 14, 2007. He acknowledges that we may refuse to consider this argument because it was not raised at the trial court, but requests that we exercise our discretion to consider the argument nonetheless.

10

Corpus delicti is primarily a rule of sufficiency and can be addressed for the first time on appeal. *State v. Cardenas–Flores*, No. 93385-5, slip op. 23 (Wash. Aug. 17, 2017), https://www.courts.wa.gov/opinions/pdf/933855.pdf. In addressing Cover's challenge, we hold that Cover's challenge fails because the *corpus delicti* rule is concerned with the described crime, not the date on which the described crime occurred.

1.      Legal Principles

Under the *corpus delicti* rule:

The confession of a person charged with the commission of a crime is not sufficient to establish the *corpus delicti*, but if there is independent proof thereof, such confession may then be considered in connection therewith and the *corpus delicti* established by a combination of the independent proof and the confession.

The independent evidence need not be of such a character as would establish the *corpus delicti* beyond a reasonable doubt, or even by a preponderance of the proof. It is sufficient if it *prima facie* establishes the *corpus delicti*.

*State v. Aten*, 130 Wn.2d 640, 656, 927 P.2d 210 (1996) (quoting *State v. Meyer*, 37 Wn.2d 759, 763-64, 226 P.2d 204 (1951)).

"The *corpus delicti* can be proved by either direct or circumstantial evidence." *Id.* at 655. And the evidence does not need to be sufficient to support a conviction or even enough to send the case to a jury. *Id.* at 656. But the independent evidence must be sufficient to provide prima facie corroboration of the crime allegedly committed. *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006). The ultimate question is "whether independent evidence corroborates *the crime described in a defendant's incriminating statement.*" *Id.* at 331.

In evaluating the independent evidence, we assume the truth of the State's evidence and consider the logical and reasonable inferences flowing from that evidence in the light most

11

favorable to the State. *Aten*, 130 Wn.2d at 658. Prima facie corroboration exists where the independent evidence, and its logical and reasonable inferences, support the charge sought to be proved based on the crime described in the incriminating statement. *Brockob*, 159 Wn.2d at 328.[3] However, the independent corroborating evidence "'must be consistent with guilt and inconsistent with a[ ] hypothesis of innocence.'" *Id.* at 329 (alteration in original) (quoting *Aten*, 130 Wn.2d at 660) (alteration in original). Where no such evidence exists, the defendant's statement cannot be used to prove the defendant's guilt at trial. *Aten*, 130 Wn.2d at 656.

    2.    The *Corpus Delicti* was Established

Cover argues that the *corpus delicti* rule precludes his admission to having sex with S.M. on April 14, 2007. Cover's contention is that that the State was required to present corroborating evidence that he had sexual contact with S.M. *on April 14, 2007*, and that the State failed to present other evidence relating to that specific day. We hold that Cover's argument fails.

As the court in *Brockob* explained, "the corpus delicti rule revolves around whether independent evidence corroborates *the crime described in a defendant's incriminating statement.*" 159 Wn.2d at 331. Cover was charged with, and convicted of, third degree rape of a child. Third degree rape of a child is proscribed in Washington under RCW 9A.44.079(1), which states:

---

[3] As our Supreme Court in *Brockob* noted:

> [W]e are among a minority of courts that has declined to adopt a more relaxed rule used by federal courts. Under the federal rule, the State need only present independent evidence sufficient to establish that the incriminating statement is trustworthy. Under the Washington rule, however, the evidence must independently *corroborate,* or confirm, a defendant's incriminating statement.

159 Wn.2d at 328-29 (internal citations omitted).

> A person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim.

*See also* CP at 142 (Jury Instruction 8 stating the same). Thus, the crime is Cover (1) having sexual intercourse with S.M., when S.M. (2) was at least 14 years old and less than 16 years old, and at least 48 months younger than Cover.[4] *See e.g.*, CP at 143 (Jury Instruction 13 providing the to-convict instruction for count 3).

Here, the "defendant's incriminating statement," was that he had sexual intercourse with S.M. *Brockob*, 159 Wn.2d at 331. The specific date, April 14, 2007, is important only insofar as it confirms that the last time Cover had sexual intercourse with S.M. was before S.M. turned 16 years old. All of the instances of sexual contact testified to at trial occurred before Cover married S.M. the first time, and S.M. was not 16 years old until Cover married her the second time. Therefore, the specific date, April 14, 2007, is not itself incriminating, nor does it make the statement that Cover had sexual intercourse with S.M. any more or less incriminating.

Also, the fact that Cover had sexual intercourse with S.M. before she turned 16 was corroborated by evidence independent of Cover's statement. S.M. and Barnett both testified about Cover having sexual intercourse with S.M., and the logical and reasonable inferences from that testimony support the charge of third degree rape of a child. *Brockob*, 159 Wn.2d at 328. Therefore, we hold that Cover's *corpus delicti* challenge fails because independent evidence

---

[4] That S.M. is at least 48 months younger than Cover is not disputed.

presented at trial corroborated Cover's incriminating statement that he had sexual intercourse with S.M. before she turned 16 years old.

B.    SUFFICIENCY OF THE EVIDENCE TO CONVICT

Cover argues that there was insufficient evidence to convict him of a third count of third degree rape of a child.[5]  Cover argues there was insufficient evidence to support a conviction for a third count because (1) absent his statement, there was no evidence of sexual intercourse on April 14, 2007, and (2) there was insufficient evidence to support a conviction for third degree rape of a child based on the evidence presented that was unrelated to his admission regarding April 14, 2007. We hold that there was sufficient evidence presented to support the third conviction because Cover's statement that he had intercourse with S.M. on April 14, 2007 is not precluded by the *corpus delicti* rule, and, even if it was, sufficient evidence was produced to convict Cover of the third count of third degree rape of a child.

1.    Legal Principles

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  A claim of insufficiency admits the truth of the State's evidence. *Id.*  All

---

[5] Cover does not dispute the sufficiency of the evidence to convict him of third degree rape of a child based on the evidence presented regarding the first time he had sexual intercourse with S.M., nor does Cover dispute the sufficiency of the evidence to convict him of third degree rape of a child based on the evidence presented regarding the time he had sexual contact with S.M. and Barnett.

reasonable inferences must be drawn in favor of the State and interpreted most strongly against the defendant. *Id.*

2.      Cover's Admission was Admissible

Cover argues that there was insufficient evidence to establish a conviction for third degree rape of a child based on his admission to having sexual intercourse with S.M. on April 14, 2007 because his confession was inadmissible under the *corpus delicti* rule. We disagree.

Cover admitted to Chicks that Cover had sexual intercourse with S.M. on April 14, 2007. Cover fails to establish that this evidence was inadmissible. *See* Section A.2., *supra* (holding Cover's *corpus delicti* argument fails on the merits). Viewing the evidence of Cover's admission to having sexual intercourse with S.M. on April 14, 2007 in the light most favorable to the State and admitting its truth, any rational trier of fact could have found Cover guilty of third degree rape of a child beyond a reasonable doubt. *Id.* Therefore, we hold that Cover's challenge to the sufficiency of the evidence to convict him of a third count of third degree rape of a child fails.

3.      Sufficient Evidence Was Presented Without Cover's Admission

Even if Cover's admission was improperly admitted, we would still hold that sufficient evidence was presented to support Cover's third conviction of third degree rape of a child. The charging information alleged Cover committed rape of a child in the third degree between April 1, 2006 and April, 14, 2007. Third degree rape of a child is committed when the perpetrator has "[(1)] sexual intercourse with another [(2)] who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim." RCW 9A.44.079. "Sexual intercourse" is defined as follows:

(1) "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and

(b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes, and

(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

(2) "Sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party.

RCW 9A.44.010. As our Supreme Court has stated,

> The unit of prosecution for rape is "sexual intercourse," which the Legislature has defined as complete upon "*any* penetration of the vagina or anus, however slight. . . ." RCW 9A.44.010 (emphasis added). Although the word "any" is not defined by the statute, "Washington courts have repeatedly construed the word 'any' to mean 'every' and 'all'."

*State v. Tili*, 139 Wn.2d 107, 115, 985 P.2d 365 (1999) (quoting *State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991)).

Here, the evidence presented was sufficient to convict Cover of a third count of third degree rape of a child. First, the first time Cover had sexual intercourse with S.M., Cover put his mouth on S.M.'s vagina and had vaginal intercourse with S.M. The sexual contact of Cover's mouth to S.M.'s vagina and the vaginal intercourse constitute two separate instances of rape. RCW 9A.44.010(1), (2). Second, during the incident involving Cover and Barnett, S.M. testified that Cover had both anal and vaginal intercourse with S.M., and performed oral sex on S.M. VRP at 191, 193. The anal and vaginal penetration each constituted an independent instance of sexual intercourse, and the sexual contact of Cover's mouth on S.M.'s vagina constituted a third

independent instance of sexual intercourse. RCW 9A.44.010(1), (2); *Tili*, 139 Wn.2d at 119 ("Because sexual intercourse is defined in RCW 9A.44.010(1) as "any penetration of the vagina or anus," the two separate digital penetrations of the victim's anus and vagina with Tili's finger, followed by penile penetration of the vagina, constitute three separate units of prosecution."). Additionally, S.M. testified that on a different day, Cover put his penis in her mouth while touching her vagina with his mouth, calling it "69." 2 VRP at 192. This act was another instance of rape. RCW 9A.44.010(1)(c), (2). Furthermore, S.M. testified that Cover had vaginal intercourse with her 10 to 20 times before the rapes were reported to the police, and these instances of vaginal intercourse would take place at Barnett's house and at Cover's house. With this, we hold that sufficient evidence was presented to support Cover's convictions for three counts of third degree rape of a child.

C.     ADMISSION OF PRIOR CONSISTENT STATEMENTS

Cover argues the trial court erred in admitting the statements S.M. made to Megan and law enforcement as prior consistent statements because there was no allegation of a recent fabrication, so the statements were not admissible under ER 801(d)(1)(ii). We hold that Cover did not preserve this argument for appeal.

Failure to object at trial generally waives the right to appeal. RAP 2.5(a); *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). This rule "encourages parties to make timely objections, gives the trial judge an opportunity to address an issue before it becomes an error on appeal, and promotes the important policies of economy and finality." *Id.* Before addressing the merits of an assigned error that was not preserved, the party assigning error must

show that (1) "the error is truly of a constitutional magnitude," and (2) "the error is manifest." *Id.*; RAP 2.5(a)(3).

Here, Cover failed to preserve the assigned error for appeal and does not argue that the assigned error is one of constitutional magnitude nor that it is manifest. The State offered S.M.'s prior consistent statements under ER 613. Cover acknowledged that the defense had impeached S.M. with the recantation letter and conceded that the State could rehabilitate S.M. with prior consistent statements under ER 613. Therefore, we decline to consider Cover's assignment of error because he did not preserve the issue for appeal and makes no argument for why it should be considered for the first time on appeal.

D.      PROSECUTORIAL MISCONDUCT

Cover argues that the prosecutor committed misconduct by (1) arguing facts not in evidence, (2) misstating the burden of proof, and (3) improperly telling the jury that Cover was incarcerated. We hold that Cover's assertions of prosecutorial misconduct fail.

1.      Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). First, we determine whether the prosecutor's conduct was improper. *Id.* at 759. If the prosecutor's conduct was improper, the question turns to whether the prosecutor's improper conduct resulted in prejudice. *Id.* at 760–61. Prejudice is established by showing a substantial likelihood that the prosecutor's misconduct affected the verdict. *Id.* at 760.

If a defendant does not object at trial, he or she is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have

cured any resulting prejudice. *Id.* at 760–61. Under this heightened standard of review, the defendant must show that "(1) "no curative instruction would have obviated any prejudicial effect on the jury" and (2) the misconduct resulted in prejudice that "had a substantial likelihood of affecting the jury verdict."" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). In making a prejudice determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762.

In closing argument, prosecutors are afforded wide latitude to draw and express reasonable inferences from the evidence. *State v. Reed*, 168 Wn. App. 553, 577, 278 P.3d 203, *review denied*, 176 Wn.2d 1009 (2012). Prosecutors may not rely on facts outside the evidence or use arguments calculated to inflame the passions or prejudices of the jury. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012); *State v. Jones*, 71 Wn. App. 798, 808, 863 P.2d 85 (1993), *review denied*, 124 Wn.2d 1018 (1994). We do not look at the alleged improper comment in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008). And we presume the jury follows the trial court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010).

2.      Arguing Facts not in Evidence

Cover argues that the prosecutor committed misconduct by arguing facts not in evidence. Specifically, Cover argues that the portion of the State's closing argument that the jury should find

an egregious lack of remorse because Cover took S.M. and hid her in California was improper. We hold that Cover has waived this argument.

Cover did not object at trial, but on appeal, he asserts that the State's conduct was flagrant and ill-intentioned without any further supporting argument. Moreover, Cover fails to argue that the State's argument was prejudicial. *Emery*, 174 Wn.2d at 760-61. Therefore, we hold that Cover has waived the issue for review.

      3.      Misstating the Burden of Proof

Cover argues that the prosecutor committed misconduct by misstating the burden of proof. Specifically, Cover asserts the State misstated the burden of proof in its rebuttal by arguing that for the defense's theory to be true, Cover and Barnett's confessions would have to be false. Cover frames this as improperly arguing that in order to find Cover not guilty, the jury had to find that the State's witnesses were lying. We hold that Cover fails to show the prosecutor's argument was improper, and even if the prosecutor's argument was improper, Cover fails to show he was prejudiced.

Cover did not object at trial. However, he relies on *State v. Johnson*, 158 Wn. App. 677, 685, 243 P.3d 936 (2010), *review denied*, 171 Wn.2d 1013 (2011), to show that no objection is necessary for this court to conclude that the prosecutor's argument was flagrant, ill-intentioned, and incurable. Cover also cites *State v. Fleming*, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996), *review denied*, 131 Wn.2d 1018 (1997), for the proposition that courts have "repeatedly held that it is misconduct for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken." Br. of Appellant at 27.

In *Johnson*, the court held that a prosecutor's explanation of the beyond-a-reasonable-doubt standard was flagrant, ill-intentioned, and incurable when the prosecutor analogized the standard to putting together a jigsaw puzzle and being sure of what the picture will be despite only half of the puzzle being put together. 158 Wn. App. at 682, 685-86. The prosecutor here did not analogize the State's burden of proof to a percentage of a completed jigsaw puzzle. Accordingly, Cover's discussion of *Johnson*, 158 Wn. App. at 685, is not persuasive.

In *Fleming*, the court held that the prosecutor committed misconduct when the prosecutor argued:

> "[F]or you to find the defendants, Derek Lee and Dwight Fleming, not guilty of the crime of rape in the second degree, with which each of them have been charged, based on the unequivocal testimony of [D.S.] as to what occurred to her back in her bedroom that night, *you would have to find either that [D.S.] has lied about what occurred in that bedroom or that she was confused; essentially that she fantasized what occurred back in that bedroom.*"

83 Wn. App at 213 (quoting the record). The *Fleming* court explained that this argument was a misstatement of the law because it flipped the burden of proof to the defendant. *Id.* The court explained, "The jury would not have had to find that D.S. was mistaken or lying in order to acquit; instead, it was *required* to acquit *unless* it had an abiding conviction in the truth of her testimony." *Id.*

Here, the defense argued in closing that the case against Cover was based only on S.M.'s allegations. 3 VRP at 501 ("This case ultimately comes down to the words of [S.M.]. . . . It ultimately comes down to her word."). In rebuttal, the prosecutor responded that the case against Cover did not just rely on S.M.'s allegations, but also on the consistency between S.M.'s allegations and the testimony of several individuals. In the context of the arguments as a whole,

the prosecutor argued that S.M.'s allegations in 2007 and at the time of trial in 2016 were consistent, and that Barnett's confessions (in 2007 and at trial) and Cover's statements were consistent with those allegations. The prosecutor also argued that Cover's theory at trial required the jury to dismiss these consistencies and Barnett's and Cover's statements against interest.

The prosecutor's argument in rebuttal here is different than the prosecutor's closing argument in *Fleming*, and a different result necessarily follows. Rather than arguing that the jury would have to make an affirmative finding that S.M. was lying or mistaken in order to acquit Cover, as the prosecutor in *Fleming* did, the prosecutor here argued that to accept the theory posited in the defense's closing, the jury would have to ignore the consistencies in the allegations and the confessions of the alleged perpetrators. Accordingly, the reasoning that required reversal in *Fleming* does not apply here. Because Cover fails to establish that the prosecutor's conduct was improper, we hold Cover's argument for prosecutorial misconduct fails.

Also, even if the prosecutor's argument was improper, Cover fails to show he was prejudiced. The trial court instructed the jury as to the burden of proof, and the prosecutor reiterated to the jury in closing, and again in rebuttal, that the State had the burden of proof. "Jurors are presumed to follow the court's instructions." *Kalebaugh*, 183 Wn.2d at 586. Cover fails to identify or argue anything to rebut that presumption. Therefore, even if the prosecutor committed misconduct, Cover fails to show he was prejudiced, and his prosecutorial misconduct claim fails.

4. Disclosing Defendant's Incarceration

Cover argues the prosecutor committed misconduct by asking Patton if she had spoken to Cover since he had been in custody at the Clark County Jail. Cover argues that allowing the jury

to know he was in jail deprived him of his right to a fair trial. We hold Cover waived this assignment of error by not raising it below.

Cover did not object to the question and, therefore, is presumed to have waived the issue for appeal unless he can show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455). Here, had Cover objected to the question, the sentencing court would have had the opportunity to tell the jury to disregard the question. Cover does not show how such a curative instruction would have been ineffective in obviating any prejudicial effect on the jury. Moreover, Cover provides no authority or discussion to show that the prosecutor's question "'had a substantial likelihood of affecting the jury verdict.'" *Id.* (quoting *Thorgerson*, 172 Wn.2d at 455). Failing to show both requirements under *Emery*, we hold that Cover waived this assignment of error on appeal.

E.    ONGOING PATTERN OF ABUSE INSTRUCTION

Cover argues that the ongoing pattern of abuse jury instruction and the corresponding special verdict form would have allowed the jury to base the special finding on sexual intercourse he had with S.M. after they were married or after she turned 16. We hold that Cover's argument fails because Cover cannot show the actual prejudice required to raise this argument for the first time on appeal.

Cover did not object to this instruction at trial. The general rule is that an assignment of error must be preserved at the trial court level, but there is an exception to the rule when the claimed error is a "'manifest error affecting a constitutional right.'" *State v. O'Hara*, 167 Wn.2d 91, 98,

217 P.3d 756 (2009) (quoting RAP 2.5(a)). "To meet RAP 2.5(a) and raise an error for the first time on appeal, an appellant must demonstrate (1) the error is manifest and (2) the error is truly of constitutional dimension." *Id.* "'Manifest in RAP 2.5(a)(3) requires a showing of actual prejudice.'" *Id.* at 99 (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). To determine if an error is of constitutional magnitude, we preview the argument's merits. *State v. Reeder*, 181 Wn. App. 897, 912, 330 P.3d 786 (2014), *aff'd*, 184 Wn.2d 805, 365 P.3d 1243 (2015).

Here, Cover cannot establish actual prejudice. The State's evidence related to Cover's acts before he married S.M., before S.M. was 16 years old. The State did not rely on evidence or argue that Cover and S.M. had intercourse after they were married or after S.M. turned 16. Because the State did not rely on evidence or argue that Cover and S.M. had intercourse after they were married or after S.M. turned 16 for the conviction, Cover cannot establish that he suffered actual prejudice from the jury instruction and special verdict form. Therefore, we hold that Cover cannot show the requisite actual prejudice to raise this issue for the first time on appeal.

F.      EXCEPTIONAL SENTENCE CHALLENGE

Cover argues that the sentencing court improperly (1) based the exceptional sentence on Cover legally marrying and living with S.M., and (2) imposed a clearly excessive sentence. We hold that Cover's challenges to his exceptional sentence fail.

1.      Basis for the Exceptional Sentence

Cover argues the sentencing court erred because it imposed the exceptional sentence on improper bases. We reject his challenge.

Under the invited error doctrine, a defendant may not set up an error at trial and then challenge that error on appeal. *State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009). To

determine whether the invited error doctrine applies, courts examine whether the defendant affirmatively assented to the error, materially contributed to it, or benefited from it. *Id.* at 154. Courts have applied this doctrine where a defendant urged the court to impose an exceptional sentence and acknowledged the application of an aggravating factor. *State v. Smith*, 82 Wn. App. 153, 162-63, 916 P.2d 960 (1996).

In *Smith*, the defense conceded at sentencing "'that the aggravating circumstance of deliberate cruelty has been proven and would be an appropriate factor for the Court to consider in this case. That factor would justify the imposition of an exceptional sentence above the standard range. However, the other factors listed by the State would not.'" *Id.* (quoting the record). The *Smith* court held that the appellant's challenge to the court's reliance on the deliberate cruelty finding was waived under the invited error doctrine. *Id.* at 163.

Here, as in *Smith*, Cover specifically agreed that he deserved an exceptional sentence above the standard range, and he specifically requested a sentence that was above the standard range. Cover argued:

> [I]t's not even a question of whether the court should go above the standard range.
>
> We think the fact that the jury found the aggravating factors that the court has a basis and—and perhaps even an obligation to go about the standard range of—up to sixty months. . . .
>
> We'd ask the court to consider exceeding the sixty months but by a smaller margin than as suggested either by the State or by the Department of Corrections.

3 VRP at 557-58. Therefore, we hold that, as with the defendant in *Smith*, Cover cannot challenge the sentencing court's imposition of an exceptional sentence because he conceded that the sentencing court had a basis for imposing an exceptional sentence at sentencing. *Id.* at 162-63.

2.       Cover's Sentence was not Clearly Excessive

Cover argues that his 180-month sentence was clearly excessive. We disagree.

We review whether a sentence is clearly excessive for an abuse of discretion. *State v. Ritchie*, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995). The sentencing court abuses its discretion in setting the length of an exceptional sentence by relying on an impermissible reason or by imposing a sentence that is so long that, in light of the record, it shocks the conscience of the reviewing court. *Id.* at 395-96. A sentence that shocks the conscience is one that no reasonable person would impose. *State v. Knutz*, 161 Wn. App. 395, 411, 253 P.3d 437 (2011). We have wide latitude in affirming the length of an exceptional sentence. *State v. Halsey*, 140 Wn. App. 313, 325, 165 P.3d 409 (2007).

Cover argues that the sentence was clearly excessive because it was the maximum allowable sentence,[6] Cover's crimes were only against S.M., Cover had no criminal history, and Cover was 41 years old when he was sentenced. None of these arguments show that the sentencing court relied on impermissible reasoning or that his sentence shocked the conscious. Based on the evidence presented at trial showing that Cover raped S.M. repeatedly and in several different ways, S.M.'s age at the times she was raped, and S.M.'s living and familial situation, we hold that the sentencing court did not abuse its discretion in sentencing Cover.

G.     INEFFECTIVE ASSISTANCE OF COUNSEL

---

[6] Cover was not actually sentenced to the maximum allowed by law. Each conviction carried a sentence of 46-61 months. RCW 9.94A.510; CP at 206 (showing an offender score of 6, a serious level of 6, and a maximum range for each conviction of 46-61 months).

Cover argues his attorney provided ineffective assistance at trial by failing to object at three different times: first, to the admission of his confession; second, to the ongoing pattern of abuse jury instruction and corresponding special verdict form; and third, to the prosecutor's reference of Cover's present incarceration on the cross-examination of Cover's witness.[7] We hold that Cover's ineffective assistance of counsel arguments fail.

1.      Legal Principles

The right to effective assistance of counsel is afforded criminal defendants by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). To establish ineffective assistance of counsel, Cover must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). To show prejudice, Cover must demonstrate that there is reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *McFarland*, 127 Wn.2d at 335. If Cover fails to satisfy either prong, this court need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

There is a strong presumption of effective assistance, and Cover bears the burden of demonstrating the absence of a legitimate strategic or tactical reason for the challenged conduct.

---

[7] Cover also assigns error to defense counsel's failure to object to the State's argument regarding facts not in evidence and the State's misstatement of the burden of proof. However, Cover provides no argument to support his assigned error. Therefore, we do not address these issues. RAP 10.3(a)(6).

*McFarland*, 127 Wn.2d at 336. Decisions on whether and when to object are "classic example[s] of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (quoting *Madison*, 53 Wn. App. at 763). It is a legitimate trial tactic to forego an objection in circumstances where counsel wishes to avoid highlighting certain evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). Where a defendant bases his ineffective assistance of counsel claim on trial counsel's failure to object, the defendant must show that the objection would likely have succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007).

2. Failure to Object on Grounds of *Corpus Delicti*

Cover argues he received ineffective assistance of counsel when his attorney did not object to admitting his confession on *corpus delicti* grounds. We hold that Cover's attorney did not provide deficient performance by failing to object on *corpus delicti* grounds.

As explained in Section A.2., *supra*, admission of Cover's confession was proper because the *corpus delicti* was established. Because the *corpus delicti* was established, an objection on *corpus delicti* grounds would not have succeeded, and Cover's ineffective assistance argument for failure to object on those grounds necessarily fails.

3. Failure to Object to the Ongoing Pattern of Abuse Jury Instruction

Cover argues he received ineffective assistance of counsel when his attorney did not object to the ongoing pattern of abuse jury instruction and the corresponding special verdict form. We disagree.

As explained in Section E, *supra*, the evidence presented at trial showed Cover and S.M. having sexual intercourse before they were married and before S.M. turned 16 years old. And the jury was instructed to consider only the evidence presented. The evidence showed that Cover repeatedly had sexual intercourse with S.M. when S.M. was under 16 years old. Based on the evidence, Cover cannot establish that an objection would likely have succeeded. Therefore, we hold Cover's claim that counsel provided ineffective assistance by failing to object to the jury instruction and special verdict form fails. *Hendrickson*, 129 Wn.2d at 78.

4.      Failure to Object to the Disclosure of Defendant's Incarceration

Cover argues he received ineffective assistance of counsel when his attorney did not object to the prosecutor's question to Patton that referenced Cover's incarceration. We hold Cover's argument fails because he fails to show he was prejudiced by the alleged deficient performance.

Even if we assume without deciding that Cover's attorney was deficient in failing to object to the incarceration reference, Cover fails to argue that the result of the proceeding would have been different had defense counsel objected. Failing to show that there is a reasonable probability that, but for his counsel's deficient performance, the result of the proceeding would have been different is fatal to an ineffective assistance claim. *McFarland*, 127 Wn.2d at 335. Therefore, we hold that Cover's ineffective assistance of counsel challenge fails.

H.      CUMULATIVE ERROR DOCTRINE

Cover argues that the cumulative effect of the errors in his trial deprived him of his right to a fair trial. Under the cumulative error doctrine, the appellate court will reverse a trial court verdict when it appears reasonably probable that the cumulative effect of errors materially affected the outcome, even when no one error alone mandates reversal. *State v. Russell*, 125 Wn.2d 24, 93,

882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995). Because Cover has not shown multiple errors, we hold that his cumulative errors challenge fails.

I.      APPELLATE COSTS

Cover requests that we decline to impose appellate costs against him if the State prevails on this appeal and makes a proper request. If the State files a cost bill, we defer to a commissioner of this court the determination of appellate costs under RAP 14.2.

J.      SAG ARGUMENTS

In a SAG,[8] Cover asks us to review (1) the denial of his motion for mistrial during the State's questioning of Chicks; (2) his offender score; and (3) whether his sentences should run concurrently. We hold that the trial court did not abuse its discretion in denying the motion for mistrial, Cover's offender score was properly calculated, and the sentencing court did not abuse its discretion in running his sentences consecutively.

1.      Motion for Mistrial was Properly Denied

Cover asks us to review whether the trial court abused its discretion in denying the defense's motion for mistrial. We hold that the trial court did not abuse its discretion.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *State v. Elkins*, 188 Wn. App. 386, 407, 353 P.3d 648, *review denied*, 184 Wn.2d 1025 (2015). "The trial court abuses its discretion only when 'no reasonable judge would have reached the same conclusion.'" *Id.* (quoting *State v. Rodriguez*, 146 Wn.2d 260, 269, 45 P.3d 541 (2002)).

---

[8] RAP 10.10 provides that a defendant in a criminal case on direct appeal may file a statement of additional grounds for the appellate court to review that were not addressed in his brief to the court.

Declaring a mistrial is a "drastic measure," and there are other options a trial court may choose to exercise based on the individual situation. *State v. Falk*, 17 Wn. App. 905, 908, 567 P.2d 235 (1977). We will overturn the trial court's denial of a motion for mistrial only "when there is a 'substantial likelihood' that the error prompting the request for a mistrial affected the jury's verdict." *Rodriguez*, 146 Wn.2d at 269–70 (quoting *Russell*, 125 Wn.2d at 85 (internal quotations omitted)). "In determining whether the effect of an irregular occurrence at trial affected the trial's outcome, this court examines: (1) the seriousness of the irregularity; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it." *State v. Greiff*, 141 Wn.2d 910, 921, 10 P.3d 390 (2000).

Here, Cover moved for a mistrial because Chicks testified that S.M. had told him that the first time Cover had sexual intercourse with her was in June or July of 2006, and S.M. had not testified to that timeframe. The trial court issued a curative instruction, striking the statement that it might have occurred in the summer of 2006. Evidence was later admitted through Chick's testimony that Cover had told him that the first time Cover had sexual intercourse with S.M. was in the summer of 2006.

Here, there is not a substantial likelihood that the error affected the jury's verdict. The curative instruction properly addressed the error by directing the jury to disregard Chicks's reference to the summer of 2006 as the first time Cover had sexual intercourse with S.M., which was the basis for the objection. Moreover, the reference to the summer of 2006 came into evidence a short time later when Chicks testified that Cover told him that the first time Cover had sexual intercourse with S.M. was in the summer of 2006. Therefore, we hold that the trial court did not abuse its discretion in denying Cover's motion for a mistrial.

2.     Offender Score of 6 was Proper

Cover asks us to review the calculation of his offender score. We hold that his offender score was correctly calculated.

We review de novo the calculation of an offender score and any statutory interpretation that is required. *State v. Rodriguez*, 183 Wn. App. 947, 953, 335 P.3d 448 (2014), *review denied*, 182 Wn.2d 1022 (2015). "Convictions entered or sentenced on the same date as the conviction for which the offender score is being computed" are deemed "other current offenses." RCW 9.94A.525(1). Subject to provisions not applicable here, "whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score." RCW 9.94A.589(1)(a). "If the present conviction is for a sex offense . . . count three points for each adult and juvenile prior sex offense conviction." RCW 9.94A.525(17). A "[s]ex offense" includes "[a] felony that is a violation of chapter 9A.44 RCW other that RCW 9A.44.132." RCW 9.94A.030(47)(a)(i). RCW 9A.44.079 proscribes third degree rape of a child.

Here, Cover's offender score for each current offense was properly calculated at 6. With respect to count 1, his two other current offenses are the other two third degree rape of a child convictions, which are both sex offenses, and other current offenses are counted as prior convictions for purposes of calculating offender scores. RCW 9.94A.030(47)(a)(i); RCW 9A.44.079; RCW 9.94A.589(1)(a). Because both of those other current/prior convictions are sex offenses, RCW 9.94A.525(17) requires that each count as three points. With two other current/prior convictions counting as three points each, Cover's offender score for count 1 is 6.

The same reasoning and math applies to counts 2 and 3. Thus, Cover's offender score for count 1 is 6; his offender score for count 2 is 6; and his offender score for count 3 is 6. Accordingly, we hold that Cover's offender score for each count was correctly calculated.

3.      Concurrent versus Consecutive Sentences

Finally, Cover asks us to review whether his sentences should run concurrently. We hold, for the reasons explained in Section F, *supra*, that the sentencing court did not err in imposing the exceptional sentence as it did.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, J.

Bjorgen, C.J.